127 T.C. No. 2

UNITED STATES TAX COURT

DAVID BRUCE BILLINGS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6148-03.                    Filed July 25, 2006.

P's wife did not report embezzlement income on their joint 1999 return. After she was caught, P and she filed an amended tax return that reported the embezzlement income. P then applied for relief from joint and several liability under IRC sec. 6015(f). The Commissioner issued a notice of determination denying his request, and P filed a petition under sec. 6015(e) to review the Commissioner's determination. P and R stipulated that no relief is available under IRC sec. 6015(b) and (c). Held: Upon reconsideration, we no longer adhere to our prior holding that sec. 6015(e) gives us jurisdiction over such nondeficiency stand-alone petitions. Ewing v. Commissioner, 118 T.C. 494 (2002), revd. 439 F.3d 1009 (9th Cir. 2006), no longer followed.

Patrick Wiesner, for petitioner.

Vicki L. Miller, for respondent.

OPINION

HOLMES, Judge: In 1999, Rosalee Billings began embezzling money from her employer. She kept her husband in the dark about her embezzlement and didn't report the ill-gotten income on their joint return. After she was caught in 2000, she confessed her theft to him, and together they signed an amended joint return that reported the stolen income and showed a hefty increase in the tax owed. He asked the Commissioner to be relieved of joint liability for the increased tax, but his request was refused because he knew about the embezzled income when he signed the amended return, and also knew that the increased tax shown on that amended return was not going to be paid.

Billings began his case in our Court by filing a "nondeficiency stand-alone" petition--"nondeficiency" because the IRS accepted his amended return as filed and asserted no deficiency against him, and "stand-alone" because his claim for innocent spouse relief was made under section 6015 and not as part of a deficiency action or in response to an IRS decision to begin collecting his tax debt through liens or levies. The particular part of section 6015 under which he seeks relief is section 6015(f).[1] This subsection is the only one available to spouses against whom the IRS has not asserted a deficiency. In

_____

[1] Section references are to the Internal Revenue Code; Rule references are to the Tax Court Rules of Practice and Procedure.

Ewing v. Commissioner, 118 T.C. 494 (2002) (Ewing I),[2] we held that the Tax Court had jurisdiction over nondeficiency stand-alone petitions like Billings's. The Ninth Circuit has now reversed us, Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006), revg. Ewing I, 118 T.C. 494, vacating 122 T.C. 32 (2004); the Eighth Circuit has adopted the Ninth Circuit's position, Bartman v. Commissioner, 446 F.3d 785, 787 (8th Cir. 2006), affg. in part, vacating in part T.C. Memo. 2004-93; and the Second Circuit has questioned our decision, see Maier v. Commissioner, 360 F.3d 361, 363 n.1 (2d Cir. 2004), affg. 119 T.C. 267 (2002).

Billings's case is one of the large number of nondeficiency stand-alone cases that began accumulating on our docket while Ewing I was on appeal. We now revisit the question of whether we have jurisdiction to review the Commissioner's decisions to deny relief under section 6015(f) when there is no deficiency but tax went unpaid.

## Background

David Billings was well into a 30-year career at General Motors when he married Rosalee in 1996. Rosalee herself was a payroll clerk at South Kansas City Electric Company. The Billingses kept two checking accounts, and while both were

---

[2] There is yet another Opinion in this case--Ewing v. Commissioner, 122 T.C. 32 (2004)--but it dealt with our power to consider evidence outside the administrative record in reviewing the Commissioner's decisions.

jointly held, David and Rosalee each kept almost exclusive control over one of them. In 1999, Rosalee began to transfer money from the Electric Company's payroll account into the checking account that she controlled and into which she had her own pay directly deposited.

Rosalee kept her embezzlement secret from her husband and she did not report on their 1999 return the nearly $40,000 that she had stolen. The Electric Company discovered the embezzlement in December 2000, fired her, and then notified the authorities. She told her husband what she had done and hired a lawyer, Patrick Wiesner. (Wiesner also represented David in this case and before the IRS.)

In his capacity as Rosalee's lawyer, Wiesner advised her to report the embezzlement income to the IRS on an amended return. He told her that if she did, a sentencing judge would probably be more lenient and might even depart from the U.S. Sentencing Guidelines. But section 1.6013-1(a)(1) of the income tax regulations created a problem. It prohibits spouses who have already filed a joint return for a particular year from filing amended returns changing their status to married-filing-separately once the deadline to file returns has passed. The due date for the Billingses' 1999 tax year--April 15, 2000--was long past, and so Wiesner told David (whether in Wiesner's capacity as Rosalee's lawyer or as David's is unclear) that David also had to

sign the amended return, or risk having his wife face a longer sentence in a more unpleasant facility. On March 19, 2001, David signed the amended return.

That return included as taxable income the nearly $40,000 that Rosalee had embezzled in 1999. It also showed an increase in tax of over $16,000. When David signed the amended return, he knew that neither he nor his wife expected to be able to pay the increased tax. Wiesner, however, suggested that David himself might avoid liability for the extra tax by filing for innocent spouse relief under section 6015. He even filled out the required IRS form and had David sign it together with the amended return. The Billingses sent that form to the IRS, but it was never processed.

As the Billingses feared, Rosalee's embezzlement led to a criminal charge--one count of wire fraud. Less than a month later, in November 2001, she pleaded guilty. Her sentence apparently reflected a downward departure for acceptance of responsibility, though the probation officer who wrote the sentencing report did not mention that the Billingses had filed an amended return.[3]

---

[3] David argues that it was filing the amended return that led Rosalee to be sentenced to less than a year, which qualified her for residence in a halfway house rather than imprisonment. Although filing the amended return may well be one form of accepting responsibility, we found nothing in sentencing guideline precedents that suggests it was the only or most

(continued...)

In 2002, the Billingses filed for bankruptcy and received a discharge, which of course did not affect Rosalee's obligation to repay the money she'd embezzled or her own liability for the unpaid 1999 taxes. 11 U.S.C. secs. 523(a)(1), 507(a)(8) (2000). David retired from GM in 2003 and began collecting a pension, though he continues to work two other jobs. He and his wife have filed timely tax returns for later years as they came due.

As the IRS had not processed David's original request for relief, he filed another one. In November 2002, the IRS denied his request for relief based on "all the facts and circumstances," but particularly because:

> you failed to establish that it was reasonable for you to believe the tax liability was paid or was going to be paid at the time you signed the amended return.

David appealed, and the IRS issued its final determination, again denying him relief because he did not believe when he signed the amended return that the tax would be paid.

The Commissioner argues:

> Instead of filing an amended return, [Rosalee] could have contacted respondent and informed him of the unreported embezzlement income. Once informed, respondent could have proceeded with examination procedures and [Rosalee] could have agreed to respondent's determination of additional tax.

---

[3](...continued)
persuasive form. We also note that the Billingses made these decisions in late 2000, long before the Supreme Court held the guidelines to be merely advisory. See United States v. Booker, 543 U.S. 220 (2005).

Resp. Br. at 30. This would have led to the determination of a deficiency and presumably allowed David to file a petition seeking relief under a different part of section 6015. See, e.g., Haltom v. Commissioner, T.C. Memo. 2005-209.

Even under section 6015(f), Billings's position is not a weak one. In Rosenthal v. Commissioner, T.C. Memo. 2004-89, the petitioner was a widow who also had no knowledge of omitted income (in her case, an unreported IRA distribution to her late husband) when she signed the original return, but did know about it when she signed the amended return that corrected that omission. We found that the Commissioner had abused his discretion by not giving her innocent spouse relief:

> It is unpersuasive to argue, as does respondent, that petitioner's voluntary filing of an amended 1996 return and her attendant payment of the delinquent taxes attributable to the omission of income from the original 1996 return militate against equitable relief simply because she had to have known of the omission before she filed the amended return and made the payment.

Id.

Before this case was tried, Billings and the Commissioner fully stipulated the facts under Rule 122. Billings was a resident of Kansas when he filed his petition, which means an appeal lies to the Tenth Circuit unless the parties stipulate differently.

## Discussion

A married couple can choose to file their Federal tax return jointly, but if they do, both are then responsible for the return's accuracy and both are jointly and severally liable for the entire tax due. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). This can lead to harsh results, especially when one spouse hides information from the other, so Congress enacted section 6015, which directs the Commissioner to relieve qualifying "innocent spouses" from that liability. Sec. 6015(a). An innocent spouse may seek either (1) relief from liability under section 6015(b) if he can show that he was justifiably ignorant of unreported income or inflated deductions, or (2) have his tax liability allocated between himself and an estranged or former spouse under section 6015(c). Billings, however, looks to section 6015(f) for relief. Subsection (f) relief is available only to a spouse who is ineligible for relief under subsections (b) and (c) and who shows that "taking into account all the facts and circumstances, it is inequitable to hold [him] liable for any unpaid tax or any deficiency (or any portion of either)."

Billings and the Commissioner stipulated that he did not qualify for relief under either section 6015(b) or (c) because no deficiency was ever asserted against him and his wife. They were right to do so, because both those subsections require a deficiency as a condition of relief. See, e.g., Block v.

Commissioner, 120 T.C. 62, 66 (2003).  Understanding why the Billingses owed tax but had no "deficiency" after they filed their amended return requires a bit of explanation:  Section 6211(a) defines a "deficiency" as the "amount by which the tax imposed * * * exceeds * * * the amount shown as the tax by the taxpayer upon his return."  (Emphasis added.)  The Code itself doesn't tell us what effect the filing of an amended return has, but the related regulation does.  It states that "[a]ny amount shown as additional tax on an 'amended return' * * * filed after the due date of the return, shall be treated as an amount shown by the taxpayer 'upon his return' for purposes of computing the amount of the deficiency."  Sec. 301.6211-1(a), Proced. & Admin. Regs.  Because the Billingses' amended 1999 return was filed well after April 15, 2000, and the Commissioner accepted that return, the increase in tax that it showed has to be treated as an amount shown on their return.

That left Billings able to look only to subsection (f) for relief, and when the Commissioner denied it to him, left him with the problem of where to seek judicial review.  He filed in our Court and, under our decision in Ewing I, he was right to do so because we had held that section 6015(e) gave us jurisdiction to grant (f) relief in nondeficiency stand-alone cases like his.

Ewing I in turn built on two other cases.  The first was Butler, where we had to decide whether we had jurisdiction to

review the Commissioner's decision to deny 6015(f) relief when a taxpayer filed a petition to redetermine a deficiency asserted against her.  We concluded that we did, because we had for a very long time treated claims for innocent spouse relief under old section 6013(e), Act of Jan. 12, 1971, Pub. L. 91-679, 84 Stat. 2063, 2063-2064, repealed by Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(e)(1), 112 Stat. 685, 740 (1998), as "affirmative defenses" to the Commissioner's deficiency determination.  Butler, 114 T.C. at 287-288.  This followed logically from our general rule that a petition to redetermine a deficiency gives us jurisdiction over the entire deficiency and not just the particular items listed in the notice of deficiency.

So unless there had been some change in the law, a taxpayer challenging a notice of deficiency could, after enactment of section 6015, continue to argue that he was an innocent spouse. What made Butler notable is that the Commissioner argued that section 6015(e)[4] was precisely such a change in the law--that

---

[4] Sec. 6015(e) (as before the 2000 amendment):
SEC. 6015(e).  Petition for Review by Tax Court.--

     (1)  In general.--In the case of an individual who elects to have subsection (b) or (c) apply--

        (A)  In general.--The individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to

(continued...)

this new section whose words seemed on their face to expand our jurisdiction had an esoteric meaning that shrank it instead. We disagreed, looking instead at the class of those covered by the language of the section--individuals who elect to have subsection (b) or (c) apply--and finding nothing in either section 6015(e)'s language or its legislative history "that precludes our review of the Commissioner's denial of equitable relief pursuant to section 6015(f) where the taxpayer has made the requisite election for relief pursuant to section 6015(b) or (c)." Butler, 114 T.C. at 290.

Just a short time later, we decided Fernandez v. Commissioner, 114 T.C. 324 (2000). Fernandez, unlike Butler, was a "stand-alone" case; i.e., one in which the claim for innocent spouse relief was not raised as a defense to a deficiency but by itself.[5] In Fernandez, we held that section 6015(e) also gave us jurisdiction over a stand-alone petition to review the Commissioner's denial of relief under section 6015(f):

> We first look to the prefatory language
> contained in section 6015(e)(1) which states:
> "in the case of an individual who elects to
> have subsection (b) or (c) apply." We
> conclude that this language does not contain

---

[4](...continued)
> determine the appropriate relief
> available to the individual under this
> section if such petition is filed * * *

[5] The Commissioner actually had asserted a deficiency against Fernandez, though our opinion in the case wasn't clear on the point. See Ewing I, 118 T.C. at 500.

> words of limitation that confine our
> jurisdiction to review of an election under
> subsections (b) and/or (c), as respondent
> contends. Rather, we understand this
> language to encompass the procedural
> requirement applicable to all joint filers
> seeking innocent spouse relief and,
> therefore, states the prerequisite to seeking
> our review of such relief.

Id. at 330.[6]

We reasoned that section 6015(e)'s jurisdictional grant to determine "the appropriate relief available to the individual under this section" meant that we could grant relief to a deserving individual under any part of "this section"--meaning relief under subsection (b), (c), or (f)--because the word "section" includes all subsections. Id. at 331.

The problem we faced in Ewing I is that Congress amended section 6015(e) in 2000. It now reads (emphases showing new language):

SEC. 6015(e). Petition for Review by Tax Court.

> (1) In general.--In the case of an individual *against whom a deficiency has been asserted and* who elects to have subsection (b) or (c) apply--

> > (A) In general.--*In addition to any other remedy provided by law*, the individual may petition the Tax Court (and the Tax Court shall have

---

[6] The reference to "the procedural requirement applicable to all joint filers seeking innocent spouse relief" alludes to section 6015(f)(2), which establishes failure to win relief under subsections (b) and (c) as a condition for relief under subsection (f).

> jurisdiction) to determine the
> appropriate relief available to the
> individual under this section if such
> petition is filed--

And here our problem began, because it might seem that the
inclusion of the first new phrase was the inclusion of a new
condition--that an individual seeking innocent spouse relief must
show that the Commissioner is asserting a deficiency against him.
We raised the problem *sua sponte* in Ewing I, but both the
Commissioner and Ewing took the position that the amendment did
not deprive us of jurisdiction.  Ewing I, 118 T.C. at 506.

  Given the difficulty of the issue, we analyzed the question
at length, reasoning that

> Equitable relief under section 6015(f) is,
> and always has been, available in
> nondeficiency situations.  Under these
> circumstances, the amendment to section
> 6015(e)(1) referring to situations where "a
> deficiency has been asserted" and the
> retention of the language in that same
> section giving us jurisdiction over "the
> appropriate relief available to the
> individual under this section" creates an
> ambiguity.

Id. at 504.

  Having found an ambiguity, we then consulted the legislative
history and found nothing

> indicating that the amendment of section
> 6015(e) * * * was intended to eliminate our
> jurisdiction regarding claims for equitable
> relief under section 6015(f) over which we
> previously had jurisdiction.  The stated
> purpose for inserting the language "against
> whom a deficiency has been asserted" into
> section 6015(e) was to clarify the proper

> time for a taxpayer to submit a request to
> the Commissioner for relief under section
> 6015 regarding underreported taxes.

Id. at 505.

On appeal, the Commissioner changed his mind about the proper construction of the new language.  The Ninth Circuit agreed with him (and the dissent in Ewing I) that the first step in our reasoning--finding that the amendment to section 6015(e) was ambiguous--violated "the basic principle of statutory construction that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"  Ewing, 439 F.3d at 1014.  It concluded that "the Tax Court lacked jurisdiction because no deficiency had been asserted."  Id. at 1013.  In Bartman, the Eighth Circuit adopted the Ninth Circuit's holding, though in doing so, it may have been somewhat imprecise in its use of the terms "assertion," "determination", and "assessment" of a deficiency.  Id. at 787 (Tax Court has jurisdiction over section 6015 petitions "only where a deficiency has been asserted"); id. (Tax Court has no jurisdiction over section 6015 petitions "where no deficiency has been determined by the IRS"); id. at 788 (no Tax Court jurisdiction "because no deficiency had been assessed against Bartman").[7]

---

[7] We construe Bartman's holding to be the sentence "We agree with the Ninth Circuit that the tax court lacks jurisdiction
(continued...)

The opinions from the Eighth and Ninth Circuits create one of the unique problems that our Court sometimes has to face--we have always believed that Congress meant us to decide like cases alike, no matter where in the nation they arose, so that our precedents could be relied on by all taxpayers. Appeals from our decisions, though, go to twelve different circuit courts and so we have often had to react to appellate reversal by only one of

---

[7](...continued)
under § 6015(e) unless a deficiency was asserted against the individual petitioning for review," Bartman, 446 F.3d at 787. Future cases may well show that Congress meant to give us jurisdiction when a deficiency was "asserted" because it wanted to allow taxpayers to petition for relief well before the IRS sends out a notice of deficiency or makes an assessment--perhaps as soon as issuance of a revenue agent's report, or some other time during an examination, when the IRS first "states that additional taxes may be owed." H. Conf. Rept. 106-1033, 1023 (2000), 2000-3 C.B. 304, 353 (quoted in Ewing I, 118 T.C. at 504).

The terms "determination" and "assessment" are not customarily regarded as synonyms in tax law. A "determination" is the IRS's final decision, see, e.g., secs. 6212(a), 6230(a)(3)(B). And an "assessment" is the specific procedure by which the IRS officially records a liability, see sec. 6203, triggering its power to collect taxes administratively. (The Code generally bars the IRS from assessing taxes that are being contested in our Court. See sec. 6213(a).)

We note too that, although notices of deficiency establish jurisdiction in most of our cases, see Bartman, 446 F.3d at 787, Congress has given us jurisdiction over cases in which there need be no deficiency--for example, review of the Commissioner's determinations after IRS collection due process hearings. Sec. 6330(d)(1). However, because there was no deficiency lurking in this case at all, we need not decide whether an "assertion of deficiency" is synonymous with a "notice of deficiency," much less an "assessment", in defining the limits of our jurisdiction under section 6015(e). See generally sec. 1.6015-5(b)(5), Income Tax Regs.

them.  We concluded early on that, when that happens, we should keep deciding cases as we think right.  Lawrence v. Commissioner, 27 T.C. 713, 717 (1957), revd. 258 F.2d 562 (9th Cir. 1958).  And although we also recognize an exception to that rule--we won't follow our precedent in a case appealable to a circuit where we would surely be reversed, see Lardas v. Commissioner, 99 T.C. 490, 495 (1992), explaining Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971)--we do not always wait for the Supreme Court to restore consistency in construing the Tax Code when one or more circuit courts disagree with us. As we said nearly fifty years ago, we have "no desire to ignore or lightly regard any decisions of those courts," and have "not infrequently * * * been persuaded by the reasoning of opinions of those courts to change [our] views on various questions being litigated."  Lawrence, 27 T.C. at 717.

The opinions in Ewing I and Bartman change the judicial landscape, see Robinson v. Commissioner, 119 T.C. 44, 51 (2002), and so we now reconsider our earlier reading of section 6015(e). In Ewing I, we thought that reading the key phrase in the amendment--"In the case of an individual against whom a deficiency has been asserted"--as limiting our jurisdiction made little sense if the remaining language, as we had construed it in Butler and Fernandez, continued to allow us to grant subsection (f) relief.  This did not read the amendment entirely out of the

statute, but led us to view it (especially in light of its legislative history) merely as a new timing requirement aimed at limiting speculative claims for innocent spouse relief. Cf. Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) (cautioning against comparisons between amended statutes and their predecessors to find ambiguity).

After the opinions in Ewing I and Bartman, however, this reading becomes problematic, particularly when we consider that "deficiency" itself has a defined meaning--the amount by which the tax imposed by the Internal Revenue Code exceeds the amount reported on a return, including an amended return. We now hold, consistently with those opinions, that the phrase establishes a condition precedent: A petitioner in this Court who seeks judicial review of a denial of relief must show that the Commissioner asserts that he owes more in tax than reported on his return. By amending section 6015 the way it did, Congress narrowed the class of individuals able to invoke our jurisdiction under section 6015(e)(1)(A) to those "against whom a deficiency has been asserted." We cannot fairly read Congress's phrasing of this qualification as other than a clear, though perhaps inadvertent, deprivation of our jurisdiction over nondeficiency stand-alone petitions. Placing that circumscription where it did, the "assertion of a deficiency" has become the "ticket to Tax Court" that notices of deficiency are in redetermination cases.

We similarly continue to adhere to our reading in Ewing I of the amendment's legislative history as focused on the proper time for a taxpayer to request innocent spouse relief *from the IRS*. See Ewing I, 118 T.C. at 504.  But, though "the amendment was certainly all about timing [it] was also all about deficiencies. So it simply reinforces the idea that the elections in subsections (b) and (c) are also all about deficiencies."[8]  The amendment's history shows no indication that Congress was thinking about nondeficiency relief under subsection (f) at all. And, whatever the merits of using legislative history to overcome the plain language of a statute, the merits of using the *absence* of legislative history to overcome the plain language of the statute must necessarily be weaker.[9]  Reasoning that a partial repeal of our jurisdiction would have to be in the legislative

_____

[8]  Camp, "Between a Rock and a Hard Place," 108 Tax Notes 359, 368 (2005).

[9] The taxpayer in Bartman noted in oral argument that there is a presumption against implied repeals of federal jurisdiction, citing, for example, United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1, 9 (1st Cir. 2005).  See http://www.ca8.uscourts.gov/oralargs/oaFrame.html (case no. 04-2771).  But that presumption is an application of the more general presumption disfavoring implied repeal of one statute by another--a presumption irrelevant here because it would amount to using old section 6015(e) to rewrite the amendment, and one should not use a "statute that no longer is on the books to defeat the plain language of an effective statute."  Am. Bank & Trust Co. v. Dallas County, 463 U.S. 855, 872-873 (1983); see also 1A Sutherland Statutes and Statutory Construction, sec. 23:12 (6th ed.)(irreconcilable prior provision must yield to amendment).

history to be effective is, we think, a misreckoning after <u>Ewing I</u> and <u>Bartman</u>.

We therefore overrule our holding in <u>Ewing I</u> in light of this subsequent precedent and now construe section 6015(e) as not giving us jurisdiction over nondeficiency stand-alone petitions.[10]  But if we now think the disputed phrase is not ambiguous, its effect still seems to us anomalous.  The legislative history that we reviewed in <u>Ewing I</u> strongly hints that limiting our jurisdiction was not the purpose Congress had in mind in passing the amendment.  Still, "Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals."  <u>In re Cavanaugh</u>, 306 F.3d 726, 731-732 (9th Cir. 2002).  Whatever "the gap in the section 6015 procedures that this case highlights is not one that can be closed by judicial fiat."  <u>Drake v. Commissioner</u>, 123 T.C. 320, 326 (2004).

Our reading today may also create some confusion--innocent spouse relief under all subsections of 6015 will remain available in this Court as an affirmative defense in deficiency redetermination cases because of section 6213(a), as a remedy on

---

[10] We stress that we are not revisiting our conclusion in <u>Butler</u> that relief under section 6015(f) is not committed to the Commissioner's unreviewable discretion, <u>Butler</u>, 114 T.C. at 290.

review of collection due process determinations because of section 6330(d)(1)(A), and as relief in stand-alone petitions when the Commissioner has asserted a deficiency against a petitioner.  But until and unless Congress identifies this as a problem and fixes it legislatively by expanding our jurisdiction to review all denials of innocent spouse relief, it is quite possible that the district courts will be the proper forum for review of the Commissioner's denials of relief in nondeficiency stand-alone cases.[11]  Because, however, the 2000 amendment to section 6015(e) eliminated our jurisdiction in such cases,

<u>An order will be entered dismissing the case for lack of jurisdiction</u>.

Reviewed by the Court.

HALPERN, THORNTON, and KROUPA, <u>JJ.</u>, agree with this majority opinion.

---

[11] See generally 5 U.S.C. sec. 703 (2000) (review in absence of special statutory proceeding); <u>Owner-Operators Indep. Drivers Association v. Skinner</u>, 931 F.2d 582, 585 (9th Cir. 1991) (default rule is review in federal district court under general federal question jurisdiction).

- 21 -

LARO, J., concurring:  The Court today appropriately overrules the opinion of the Court in Ewing v. Commissioner, 118 T.C. 494 (2002), revd. Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006).  With that result, I concur.[1]  As I stated in my dissent in Ewing v. Commissioner, supra at 510, the Court's opinion there, while reaching a practical result, disregarded the obvious plain reading of section 6015(e)(1).[2]  In accordance with such a plain reading, Congress has allowed the Court to review an individual's petition seeking equitable relief under section 6015(f) (equitable relief) only when:  (1) The Commissioner has

---

[1] I disagree with the lead opinion in this case in that it sets forth dicta regarding jurisdiction in situations not before the Court in this case.

[2] Sec. 6015(e)(1) empowers the Court to review a taxpayer's stand-alone petition challenging the Commissioner's determination as to the taxpayer's administrative claim for relief from joint liability under sec. 6015.  See generally Fernandez v. Commissioner, 114 T.C. 324, 329 (2000) (coining the phrase "stand-alone petition" to refer to a petition filed to invoke our jurisdiction under sec. 6015(e)(1)).  Sec. 6015(e)(1) provides in relevant part:

SEC. 6015(e).

(1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply–

(A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed * * * [timely.]

asserted a deficiency against the individual, (2) the individual has affirmatively elected to have section 6015(b) or (c) apply, and (3) the taxpayer has timely petitioned the Court to determine the appropriate relief under section 6015.[3]  To the extent that Congress has not provided the Court with jurisdiction to decide a matter, the Court may not decide it.  See Urbano v. Commissioner, 122 T.C. 384, 389 (2004); Fernandez v. Commissioner, 114 T.C. 324, 328 (2000).

I agree with the overruling of Ewing v. Commissioner, 118 T.C. 494 (2002), because that case was wrongly decided. Section 6015(e)(1) is construed clearly and unambiguously on its face to provide that the Court is authorized by that section to decide a claim for equitable relief only where:  (1) The Commissioner has asserted a deficiency against the taxpayer, (2) the taxpayer has affirmatively elected to have section 6015(b) or (c) apply, and (3) the taxpayer has timely petitioned the Court to determine the appropriate relief under section 6015. Accord Bartman v. Commissioner, 446 F.3d 785, 787 (8th Cir. 2006) ("The language of § 6015(e)(1) is clear and unambiguous"), affg.

---

[3] As discussed in Ewing v. Commissioner, 118 T.C. 494, 515 n.1, 519 (Laro, J., dissenting) (2002), revd. 439 F.3d 1009 (9th Cir. 2006), Congress used the term "equitable relief" to refer to the relief provided in sec. 6015(f).  See also id. (discussing the other two types of relief provided in sec. 6015(b) and (c)). As also discussed, the equitable relief provided in sec. 6015(f) was not available under former sec. 6013(e), but first arose during consideration in the conference underlying the enactment of sec. 6015.  See id. at 515 n.1, 519, 522-526.

in part and vacating in part T.C. Memo. 2004-93; see <u>Commissioner v. Ewing</u>, 439 F.3d at 1009, 1013 (9th Cir. 2006). Given such a plain reading, it is improper for the Court to resort to the legislative history of section 6015(e)(1) to change that reading. In accordance with deeply ingrained principles of statutory construction, the Court must apply section 6015(e)(1) according to its terms,[4] see <u>Commissioner v. Soliman</u>, 506 U.S. 168, 174 (1993); <u>Garcia v. United States</u>, 469 U.S. 70, 76 n.3 (1984); <u>Venture Funding, Ltd. v. Commissioner</u>, 110 T.C. 236, 241-242 (1998), affd. without published opinion 198 F.3d 248 (6th Cir. 1999), and must not resort to the legislative history of the statute to find ambiguities in its terms so as to apply those terms inconsistently with their plain meaning, see <u>Commissioner v. Ewing</u>, 439 F.3d at 1013. See <u>Ewing v. Commissioner</u>, 118 T.C. at 511-514 (Laro, <u>J.</u>, dissenting) (discussing the plain meaning of the terms in section 6015(e)(1) vis-a-vis the reading given those terms by the Court's opinion in that case). Accordingly, unless the Court finds that all three of the referenced requirements have been met, section 6015(e)(1) does not allow the

---

[4] Although the legislative history to a statute may sometimes override the statute's plain meaning interpretation and lead to a different result where the statute's history contains unequivocal evidence of a clear legislative intent, see <u>Consumer Prod. Safety Commn. v. GTE Sylvania, Inc.</u>, 447 U.S. 102, 108 (1980); see also <u>Allen v. Commissioner</u>, 118 T.C. 1, 17 (2002), the legislative history underlying sec. 6015(e)(1) supports the conclusions set forth in this concurring opinion. See <u>Ewing v. Commissioner</u>, 118 T.C. at 522-526 (Laro, <u>J.</u>, dissenting).

Court to review requests for equitable relief such as those presented by petitioner and the taxpayer in Ewing v. Commissioner, supra. While Congress allowed an individual to qualify for equitable relief in the appropriate case, Congress did not provide in section 6015(e)(1) that the Court could review whether a case was appropriate in the absence of an assertion of a deficiency against the individual, the individual's request for relief under section 6015(b) or (c), and the individual's timely petition to this Court. Whether it is more practical for this Court to decide the appropriateness of such a claim is not for us to opine. We must presume from a plain reading of the text of section 6015(e)(1) that Congress intended that we not have jurisdiction over such a petition and must give effect to the will of Congress as expressed through those terms. See Conn. Natl. Bank v. Germain, 503 U.S. 249, 253-254 (1992); Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982); Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).

FOLEY, HAINES, GOEKE, and WHERRY, JJ., agree with this concurring opinion.

CHIECHI, J., dissenting:  With all due respect, I am not persuaded by the United States Court of Appeals for the Ninth Circuit (Ninth Circuit)[1] or the United States Court of Appeals for the Eighth Circuit (Eighth Circuit)[2] that the Court erred in holding in Ewing I that the Court had jurisdiction over the taxpayer's claim in that case for relief under section 6015(f).  Nor does the Court Opinion[3] convince me that the Court should overrule that holding in Ewing I.

Neither the Ninth Circuit nor the Eighth Circuit expresses disagreement with, and the Court Opinion reaffirms, see Court op. pp. 9, 12, 13, 17, 19, the Court's conclusion in Ewing I that, prior to the amendment in question of section 6015(e)(1),[4] the

_____

[1]See Commissioner v. Ewing, 439 F.3d 1009 (9th Cir. 2006) (Ewing II), revg. 118 T.C. 494 (2002) (Ewing I).  In light of the Ninth Circuit's holding in Ewing II, the Ninth Circuit vacated Ewing v. Commissioner, 122 T.C. 32 (2004), which addressed issues unrelated to the jurisdictional issue that the Court considered in Ewing I.

[2]See Bartman v. Commissioner, 446 F.3d 785 (8th Cir. 2006) (Bartman), affg. in part and vacating in part T.C. Memo. 2004-93; see also Sjodin v. Commissioner, ___Fed. Appx.___, 97 AFTR 2d 2006-2622 (8th Cir. 2006) (Sjodin), vacating and remanding per curiam T.C. Memo. 2004-205.

[3]I refer to the "Court Opinion", and not to the "majority opinion", because a majority of the Court's Judges did not join the Opinion of the Court.

[4]The phrase "against whom a deficiency has been asserted" was added to sec. 6015(e)(1), effective on Dec. 21, 2000, by the Consolidated Appropriations Act, 2001 (2001 Consolidated Appropriations Act), Pub. L. 106-554, app. G, sec. 313, 114 Stat. 2763A-641 (2000).  Essentially the same phrase was added to sec. 6015(c)(3)(B), effective on the same date, by the 2001 Consolidated Appropriations Act.  Id.  After that amendment, sec.
(continued...)

Court's jurisdiction to review claims for relief under section 6015 was not limited to claims for relief from taxes that may or may not have been underreported in returns, which taxpayers raised in either "deficiency" cases commenced in the Court pursuant to section 6213(a) or so-called stand-alone section 6015 "deficiency" cases, including so-called stand-alone section 6015(f) "deficiency" cases. That is to say, prior to the amendment of section 6015(e)(1) by the 2001 Consolidated Appropriations Act (amendment of section 6015(e)(1)), the Court's jurisdiction to review claims for relief under section 6015 included claims for relief under section 6015(f) from all or a portion of any unpaid taxes (i.e., taxes not paid when returns were filed) in so-called stand-alone section 6015(f) "nondeficiency" cases.[5] See Ewing v. Commissioner, 118 T.C. 494, 500-502 (2002), revd. 439 F.3d 1009 (9th Cir. 2006); see also

_____

[4](...continued)
6015(c)(3)(B) provides:

> (B) Time for election.--An election under this subsection for any taxable year may be made at any time after a deficiency for such year is asserted but not later than 2 years after the date on which the Secretary has begun collection activities with respect to the individual making the election. [Emphasis added.]

[5]Relief is available under sec. 6015(f) if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)", and relief is not otherwise available to the taxpayer under sec. 6015(b) or (c).

Fernandez v. Commissioner, 114 T.C. 324 (2000); Butler v.
Commissioner, 114 T.C. 276 (2000).

The question that the Court addressed sua sponte in Ewing I
was whether the amendment of section 6015(e)(1) deprived the
Court of its jurisdiction to review a claim for relief under
section 6015(f) from all or a portion of any unpaid tax in a
stand-alone section 6015(f) "nondeficiency" case. Ewing v.
Commissioner, supra at 503. In resolving that question, the
Court analyzed section 6015(e)(1) both before and after its
amendment by the 2001 Consolidated Appropriations Act.[6] Id. at
502-507. In analyzing that section after its amendment, the
Court stated:

---

[6]In analyzing sec. 6015(e)(1) as amended by the 2001
Consolidated Appropriations Act, the Court relied on the
following rules of statutory construction:

> In interpreting section 6015(e), our purpose is to
> give effect to Congress's intent. * * * We begin with
> the statutory language, and we interpret that language
> with reference to the legislative history primarily to
> learn the purpose of the statute and to resolve any
> ambiguity in the words contained in the language. * * *
> Usually, the plain meaning of the statutory language is
> conclusive. * * * If the statute is ambiguous or
> silent, we may look to the statute's legislative
> history to determine Congressional intent. * * *
> Finally, because the changes to the relief from joint
> and several liability rules "were designed to correct
> perceived deficiencies and inequities in the prior
> version" of the rules, this curative legislation should
> be construed liberally to effectuate its remedial
> purpose. * * *

Ewing v. Commissioner, 118 T.C. at 503.

Our interpretation of section 6015(e) concerns the new language "against whom a deficiency has been asserted". However, section 6015(e)(1)(A) still contains the provision giving this Court jurisdiction "to determine the appropriate relief available to the individual under this section" (emphasis added), which, as previously explained, we have held gives us jurisdiction over the propriety of equitable relief under section 6015(f). Equitable relief under section 6015(f) is, and always has been, available in nondeficiency situations. Under these circumstances, the amendment to section 6015(e)(1) referring to situations where "a deficiency has been asserted" and the retention of the language in that same section giving us jurisdiction over "the appropriate relief available to the individual under this section" creates an ambiguity. Therefore, it is appropriate to consult the legislative history of the amendment made by the Consolidated Appropriations Act, 2001.

Id. at 503-504.

After having consulted the conference report accompanying the amendment of section 6015(e)(1), H. Conf. Rept. 106-1033, at 1023 (2000), 2000-3 C.B. 304, 353, the Court concluded:

The conference report indicates that the language "against whom a deficiency has been asserted" was inserted into section 6015(e) to clarify the proper time for making a request to the Commissioner for relief from joint and several liability for tax that may have been underreported on the return. Congress wanted to prevent taxpayers from submitting premature requests to the Commissioner for relief from potential deficiencies before the Commissioner had asserted that additional taxes were owed. Congress also wanted to make it clear that a taxpayer does not have to wait until after an assessment has been made before submitting a request to the Commissioner for relief under section 6015. Overall, the legislative history indicates that Congress was concerned with the proper timing of a request for relief for underreported tax and intended that taxpayers not be allowed to submit a request to the Commissioner regarding underreported tax until after the issue was raised by the IRS.

There is nothing in the legislative history indicating that the amendment of section 6015(e) by the Consolidated Appropriations Act, 2001, was intended to eliminate our jurisdiction regarding claims for equitable relief under section 6015(f) over which we previously had jurisdiction. The stated purpose for inserting the language "against whom a deficiency has been asserted" into section 6015(e) was to clarify the proper time for a taxpayer to submit a request to the Commissioner for relief under section 6015 regarding underreported taxes. * * *  [Fn. refs. omitted.]

Id. at 505.

Based upon the Court's review of the language of section 6015(e)(1) both before and after its amendment by the 2001 Consolidated Appropriations Act, the legislative history of that act, and relevant caselaw, the Court held in Ewing I that the amendment of section 6015(e)(1) did not deprive it of its jurisdiction to review the denial of equitable relief under section 6015(f) with respect to unpaid tax in a stand-alone section 6015(f) "nondeficiency" case. Id. at 505-506. The Ninth Circuit reversed that holding in Ewing II. Shortly thereafter, in Bartman, the Eighth Circuit expressed its agreement with the Ninth Circuit.[7]

An appeal in this case normally would lie in the United States Court of Appeals for the Tenth Circuit. Consequently, the Court is not required to follow the opinions of the Ninth Circuit in Ewing II and the Eighth Circuit in Bartman (and in Sjodin).

---

[7]The Eighth Circuit followed Bartman in Sjodin v. Commissioner, __ Fed. Appx. __, 97 AFTR 2d 2006-2622 (8th Cir. 2006).

Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).  Nonetheless, because the Court Opinion concludes that those opinions "change the judicial landscape", Court op. p. 16, it proceeds to reconsider Ewing I and decides to overrule it.[8]

I turn first to the Court Opinion to explain why I am not persuaded by that Opinion that the Court should overrule Ewing I. In deciding to overrule the Court's holding in Ewing I, the Court Opinion concludes that that holding

> becomes problematic, particularly when we consider that "deficiency" itself has a defined meaning--the amount by which the tax imposed by the Internal Revenue Code exceeds the amount reported on a return, including an amended return.  We now hold, consistently with those opinions [Ewing II and Bartman], that the phrase ["against whom a deficiency has been asserted"] establishes a condition precedent:  A petitioner in this Court who seeks judicial review of a denial of relief must show that the Commissioner asserts that he owes more in tax than reported on his return.  By amending section 6015 the way it did, Congress narrowed the class of individuals able to invoke our jurisdiction under section 6015(e)(1)(A) to those "against whom a deficiency has been asserted."  We cannot fairly read Congress's phrasing of this

_____

[8]In overruling Ewing I and holding that the Court does not have jurisdiction over the instant case, the Court Opinion acknowledges that "Billings's position is not a weak one."  Court op. p. 7.  Nonetheless, having held that the Court does not have jurisdiction over the instant case, the Court Opinion directs that an order be entered dismissing this case for lack of jurisdiction.  Court op. p. 20.  In doing so, perhaps the Court Opinion finds solace in its suggestion, which I consider to be an inappropriate and questionable suggestion, that "it is quite possible that the district courts will be the proper forum for review of the Commissioner's denials of relief in nondeficiency stand-alone cases."  Court op. p. 20.

qualification as other than a clear, though perhaps inadvertent, deprivation of our jurisdiction over nondeficiency stand-alone petitions. Placing that circumscription where it did, the "assertion of a deficiency" has become the "ticket to Tax Court" that notices of deficiency are in redetermination cases.

Court op. p. 17.

In asserting "that 'deficiency' itself has a defined meaning--the amount by which the tax imposed by the Internal Revenue Code exceeds the amount reported on a return, including an amended return", Court op. p. 17, the Court Opinion apparently relies on section 301.6211-1(a), Proced. & Admin. Regs., see Court op. p. 9. In maintaining that the term "deficiency" has the meaning set forth in that regulation for all purposes of the Code, including section 6015, the Court Opinion fails to acknowledge, let alone discuss, a long line of cases holding that the term "return" in the Code generally means the original return.[9] See, e.g., Badaracco v. Commissioner, 464 U.S. 386 (1984).[10] The Court Opinion is wrong in maintaining that the

---

[9]Perhaps the Court Opinion believes that the parties implicitly agree that the meaning attributed by the Court Opinion to the term "deficiency" in sec. 6015 is correct because they "stipulated that * * * [petitioner] did not qualify for relief under either section 6015(b) or (c) because no deficiency was ever asserted against him and his wife." Court op. p. 8. Suffice it to say that the Court is not bound by any stipulation of the parties as to the law. Godlewski v. Commissioner, 90 T.C. 200, 203 n.5 (1988); Sivils v. Commissioner, 86 T.C. 79, 82 (1986).

[10]In Badaracco v. Commissioner, 464 U.S. 386, 393-394 (1984), the Supreme Court of the United States stated:

(continued...)

meaning of the term "deficiency" set forth in section 301.6211-1(a), Proced. & Admin. Regs., applies for all purposes of the Code.

---

[10](...continued)
Indeed, as this Court recently has noted, Hillsboro National Bank v. Commissioner, 460 U. S. 370, 378-380, n. 10 (1983), the Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace. Thus, when Congress provided for assessment at any time in the case of a false or fraudulent "return," it plainly included by this language a false or fraudulent original return. In this connection, we note that until the decision of the Tenth Circuit in Dowell v. Commissioner, 614 F. 2d 1263 (1980), cert. pending, No. 82-1873, courts consistently had held that the operation of § 6501 and its predecessors turned on the nature of the taxpayer's original, and not his amended, return.[8]

[8]The significance of the original, and not the amended, return has been stressed in other, but related, contexts. It thus has been held consistently that the filing of an amended return in a nonfraudulent situation does not serve to extend the period within which the Commissioner may access a deficiency. See, e.g., Zellerbach Paper Co. v. Helvering, 293 U. S. 172 (1934); National Paper Products Co. v. Helvering, 293 U. S. 183 (1934); National Refining Co. v. Commissioner, 1 B. T. A. 236 (1924). It also has been held that the filing of an amended return does not serve to reduce the period within which the Commissioner may assess taxes where the original return omitted enough income to trigger the operation of the extended limitations period provided by § 6501(e) or its predecessors. See, e.g., Houston v. Commissioner, 38 T. C. 486 (1962); Goldring v. Commissioner, 20 T. C. 79 (1953). And the period of limitations for filing a refund claim under the predecessor of § 6511(a) begins to run on the filing of the original, not the amended, return. Kaltreider Construction, Inc. v. United States, 303 F.2d 366, 368 (CA3), cert. denied, 371 U. S. 877 (1962).

I agree with the Court Opinion that in the instant case there would be no "deficiency" extant after petitioner and his spouse filed their joint amended return if the meaning of that term in section 301.6211-1(a), Proced. & Admin. Regs., were applicable for purposes of section 6015.[11]  However, the Court Opinion does not consider, let alone answer, whether and why that meaning, and not the meaning established in cases such as Badaracco v. Commissioner, supra, should apply for purposes of section 6015, including section 6015(e)(1).[12]  The term "deficiency" that appears in section 6015(e)(1) in the phrase

---

[11]That there would be no "deficiency" extant after petitioner and his spouse filed their joint amended return if the definition of that term in sec. 301.6211-1(a), Proced. & Admin. Regs., were applicable for purposes of sec. 6015 does not answer the question whether "a deficiency has been asserted" for purposes of sec. 6015(e)(1).  See discussion below.  Nor does it answer the question whether there is (1) a "deficiency", or an "understatement of tax", for purposes of sec. 6015(b) or (2) a "deficiency" for purposes of sec. 6015(c).  Sec. 6015(b)(1)(B) requires that there be an "understatement of tax" in the return in order to obtain relief under sec. 6015(b).  Sec. 6015(b)(1)(D) refers to whether it is inequitable to hold the taxpayer liable "for the deficiency in tax for such taxable year attributable to such understatement".  Sec. 6015(b)(3) provides that the term "understatement" is defined by sec. 6662(d)(2)(A).  Sec. 6662(d)(2)(A) generally defines that term as the excess of "the amount of the tax required to be shown on the return" over "the amount of the tax * * * shown on the return".  Nothing in sec. 6015(b) requires that "a deficiency has been asserted".

[12]The Court Opinion's ipse dixit that, for all purposes of the Code, the only meaning of the term "deficiency" is that set forth in sec. 301.6211-1(a), Proced. & Admin. Regs., not only ignores caselaw holding to the contrary, it also disregards that nothing in sec. 6015 requires a "deficiency" (or "understatement of tax") to continue to exist at any time after a taxpayer files an original return.

"against whom a deficiency has been asserted" is not clear, plain, or unambiguous. The Court's consideration in Ewing I of the legislative history of the amendment of section 6015(e)(1) was proper.

Even assuming arguendo that the term "deficiency" that appears in section 6015(e)(1) in the phrase "against whom a deficiency has been asserted" were to have the meaning that the Court Opinion says it has, the Court Opinion's conclusions that rest on that premise are nonetheless logically flawed. It is a non sequitur for the Court Opinion to conclude that, because "'deficiency' itself has a defined meaning--the amount by which the tax imposed by the Internal Revenue Code exceeds the amount reported on a return, including an amended return", Court op. p. 17, the phrase "against whom a deficiency as been asserted" (1) is "clear", "plain", and "not ambiguous", Court op. pp. 17, 18, 19; (2) establishes a "condition precedent" to the Court's jurisdiction under section 6015, Court op. p. 17; and (3) results in a "deprivation of our jurisdiction over nondeficiency stand-alone petitions", Court op. p. 17. The meaning that the Court Opinion gives to the term "deficiency" that appears in section 6015(e)(1) in the phrase "against whom a deficiency has been asserted" does not give meaning to that entire phrase; it only gives the meaning that the Court says it has to the term "deficiency" used in that phrase. The phrase "against whom a

deficiency has been asserted" is not clear, plain, or unambiguous.  Despite its assertions to the contrary, see Court op. pp. 17, 18, 19, the Court Opinion acknowledges as much, see Court op. p. 14 note 7.  The Court's consideration in Ewing I of the legislative history of the amendment of section 6015(e)(1) was proper.

In pointing out the Eighth Circuit's interchangeable use in Bartman of terms such as "assertion of a deficiency", "determination of a deficiency", "issue of a notice of deficiency", and "assessment of a deficiency" (discussed below), the Court Opinion states:

> Future cases may well show that Congress meant to give us jurisdiction when a deficiency was "asserted" because it wanted to allow taxpayers to petition for relief well before the IRS sends out a notice of deficiency or makes an assessment--perhaps as soon as issuance of a revenue agent's report, or some other time during an examination, when the IRS first "states that additional taxes may be owed."  H. Conf. Rept. 106-1033, at 1023 (2000) (quoted in Ewing I, 118 T.C. at 504).

> The terms "determination" and "assessment" are not customarily regarded as synonyms in tax law.  A "determination" is the IRS's final decision, see, e.g., secs. 6212(a), 6230(a)(3)(B)).  And an "assessment" is the specific procedure by which the IRS officially records a liability, see sec. 6203, triggering its power to collect taxes administratively.  (The Code generally bars the IRS from assessing taxes that are being contested in our Court.  See sec. 6213(a).)

> We note too that, although notices of deficiency establish jurisdiction in most of our cases, see Bartman, 446 F.3d at 787, Congress has given us jurisdiction over cases in which there need be no deficiency--for example, review of the Commissioner's

> determinations after IRS collection due process hearings. Sec. 6330(d)(1). However, because there was no deficiency lurking in this case at all,[13] we need not decide whether an "assertion of deficiency" is synonymous with a "notice of deficiency," much less an "assessment", in defining the limits of our jurisdiction under section 6015(e). * * *

Court op. p. 15 note 7; see also Court op. p. 14.

Despite assertions to the contrary that appear in the Court Opinion, see Court op. pp. 17, 18, 19, the excerpt quoted above leaves no doubt that the Court Opinion concludes that the phrase "against whom a deficiency has been asserted" may have any one of several possible meanings. The Court Opinion thus acknowledges that that phrase is ambiguous. The internal inconsistency in the Court Opinion as to whether the phrase "against whom a deficiency has been asserted" is ambiguous is another material flaw in that Opinion. Having concluded that that phrase is ambiguous, the Court Opinion should have considered the legislative history of the amendment of section 6015(e)(1), as the Court properly did in Ewing I, in order to determine its meaning as used in section 6015(e)(1).

---

[13]I disagree that "there was no deficiency lurking in this case at all". There was a "deficiency" with respect to the original return filed by petitioner and his spouse. Nothing in the Court Opinion adequately explains why that "deficiency" with respect to the original return is not the "deficiency" in the phrase "against whom a deficiency has been asserted" in sec. 6015(e)(1). Nor does anything in the Court Opinion adequately explain why it apparently assumes that a "deficiency" must continue to exist at the time a claim for relief under sec. 6015(b) is made. See discussion above and below.

Although the Court Opinion concludes that the phrase "against whom a deficiency has been asserted" is ambiguous, see Court op. p. 14 note 7, it also concludes, inconsistently, that that phrase is "clear", "plain", and "not ambiguous", Court op. pp. 17, 18, 19. Having concluded, albeit inconsistently, that the phrase "against whom a deficiency has been asserted" is not ambiguous, the Court Opinion should have interpreted that phrase according to its language. It did not. The Court Opinion holds that the phrase "against whom a deficiency has been asserted" requires that "A petitioner in this Court who seeks judicial review of a denial of relief must show that the Commissioner asserts that he owes more in tax than reported on his return." Court op. p. 17 (emphasis added). The Court Opinion's holding uses the present tense "asserts". In contradistinction, section 6015(e)(1) uses "has been asserted". By using the present tense, which is not found in section 6015(e)(1) in the phrase "against whom a deficiency has been asserted", the Court Opinion reads into that phrase a requirement that is not in that section. Having read such a requirement into section 6015(e)(1), the Court Opinion makes matters worse by failing to specify when the taxpayer must satisfy that requirement. Thus, the Court Opinion is unclear as to whether it requires a taxpayer who files a petition with the Court seeking section 6015 relief to show, at the time the taxpayer files the petition, thereafter during the

pendency of the section 6015 Court proceeding, and/or at some other time, that "the Commissioner asserts that he [the taxpayer] owes more in tax than reported on his [the taxpayer's] return."[14] Court op. p. 17.

---

[14]If the Court Opinion intends by its use of the present tense "asserts" to impose a jurisdictional requirement that, at the time a petition is filed and thereafter during the pendency of the sec. 6015 Court proceeding, the Commissioner must be asserting that the taxpayer "owes more in tax than reported on his [the taxpayer's] return", such a holding would result in the Court's not having jurisdiction over a case in which "a deficiency has been asserted" at some point in time in the administrative process and an ultimate determination has been made while the case is pending in a sec. 6015 Court proceeding that there is no "deficiency". I believe that any such result would be wrong, even assuming arguendo that the Court Opinion were correct that the phrase "against whom a deficiency has been asserted" is a jurisdictional requirement.

Not only does the Court Opinion's holding read out of sec. 6015(e)(1) the words "has been asserted" in the phrase "against whom a deficiency has been asserted", it reads into that phrase the requirement that "the Commissioner" be asserting a "deficiency". Sec. 6015(e)(1) is silent, and thus ambiguous, regarding who must have asserted the "deficiency". If the Court Opinion were correct that the phrase "against whom a deficiency had been asserted" is "clear", "plain", and "not ambiguous", Court op. pp. 17, 18, 19, it would be inappropriate to consult the legislative history of the amendment of sec. 6015(e) in order to determine who must have asserted the "deficiency". However, it would be proper to consult the dictionary definition of the word "assert". The definition of the word "assert" in Webster's Third New International Dictionary Unabridged 131 (1993) is "state or affirm positively". Thus, petitioner could have "asserted" for purposes of sec. 6015(e)(1) a "deficiency" when he and his spouse filed their amended return and/or the Commissioner could have "asserted" a "deficiency" when the Commissioner assessed the increase in the tax shown in that amended return, which was attributable to the "deficiency" with respect to the original return. The point is that sec. 6015(e)(1) is not plain or clear regarding who must have asserted a "deficiency". It is thus necessary to consult the legislative history of the amendment of sec. 6015(e).

The only thing about the phrase "against whom a deficiency has been asserted" that is beyond question is that it does not require, as the Court Opinion does, more than that "a deficiency has been asserted" at some point in time.[15]  The Court Opinion is wrong to read the words "has been asserted" out of the phrase "against whom a deficiency has been asserted" and to read the word "asserts" into that phrase.

Although the Court Opinion declines to consider the legislative history of the amendment of section 6015(e)(1) in order to interpret the phrase "against whom a deficiency has been asserted", it nonetheless offers the following criticism of the Court's reliance on that legislative history in Ewing I:

> The amendment's history shows no indication that Congress was thinking about nondeficiency relief under subsection (f) at all.  And, whatever the merits of using legislative history to overcome the plain language of a statute, the merits of using the *absence* of legislative history to overcome the plain language of the statute must necessarily be weaker.  Reasoning that a partial repeal of our jurisdiction would have to be in the legislative history to be effective is, we

---

[15]The Court Opinion seems to recognize as much when it states:

> Future cases may well show that Congress meant to give us jurisdiction when a deficiency was "asserted" because it wanted to allow taxpayers to petition for relief well before the IRS sends out a notice of deficiency or makes an assessment--perhaps as soon as issuance of a revenue agent's report, or some other time during an examination, when the IRS first "states that additional taxes may be owed." * * *

Court op. p. 15 note 7.

>think, a misreckoning after <u>Ewing I</u> and <u>Bartman</u>. [Fn. ref. omitted.]

Court op. pp. 18-19.

The Court Opinion does not explain why "Reasoning that a partial repeal of our jurisdiction would have to be in the legislative history to be effective is * * * a misreckoning after <u>Ewing I</u> and <u>Bartman</u>." <u>Id.</u> In any event, I disagree with that conclusion, even though I agree with the Court Opinion that the legislative history of the amendment of section 6015(e)(1) does not indicate that, in adding the phrase "against whom a deficiency has been asserted", Congress had in mind a stand-alone section 6015(f) "nondeficiency" case. That is precisely the point that the Court was making in <u>Ewing I</u>. In amending section 6015(e)(1), Congress had in mind only the proper timing of a request for relief from underreported tax in a return, namely, a "deficiency" situation. <u>Ewing v. Commissioner</u>, 118 T.C. at 505. Congress did not have in mind a stand-alone section 6015(f) "nondeficiency" case when it amended section 6015(e)(1) by adding the phrase "against whom a deficiency has been asserted". Since Congress did not have in mind such a case when it enacted the amendment of section 6015(e)(1), Congress could not have had in mind depriving, and Congress could not have intended to deprive, the Court of the jurisdiction that the Court had over such a case prior to that amendment. <u>Id.</u> at 504-505. If Congress had intended to deprive the Court of the jurisdiction that it had

prior to the amendment of section 6015(e)(1) over a stand-alone section 6015(f) "nondeficiency case", it would have expressly and clearly so stated in the legislative history of that amendment. It did not.  The silence of Congress is strident.[16]

I turn now to the Eighth Circuit's opinion in Bartman to explain why I am not persuaded by that opinion that the Court should overrule Ewing I.  As discussed above, the Court Opinion points out, Court op. p. 14 note 7, that the Eighth Circuit in Bartman interchangeably used terms such as "determination of a deficiency", "issue of a notice of deficiency", and "assessed deficiency", even though those terms are not synonymous in the Federal tax law.  The Eighth Circuit in Bartman also interchangeably used those terms with the phrase "a deficiency has been asserted" in section 6015(e)(1), evidently having concluded that all of those terms are synonymous in the Federal tax law.[17]  As the legislative history of section 6015(e)(1)

---

[16]Senators Feinstein and Kyl recently introduced S. 3523, 109th Cong., 2d Sess., sec. 1 (2006), that would clarify that the Court has jurisdiction under sec. 6015(e) to review all claims for relief under sec. 6015(f).  In introducing that bill, Senator Feinstein stated:  "this bill clarifies the statute's original intent".  152 Cong. Rec. S5962 (daily ed. June 15, 2006).

[17]To illustrate, the Eighth Circuit stated in Bartman:

The IRS did not determine a deficiency against Bartman for tax year 1997.  Bartman cites Ewing v. Comm'r, 118 T.C. 494, 2002 WL 1150775 (2002), where the tax court found that it had jurisdiction to review a petition from a denial of a request for § 6015 relief,
(continued...)

recognizes,[18] those terms are not synonymous in the Federal tax

---

[17](...continued)
despite the fact that no notice of deficiency had been issued. Since briefing and oral argument in this case, however, the Ninth Circuit reversed the tax court and held that the tax court has no jurisdiction under § 6015(e) to consider a petition for review where no deficiency was determined by the IRS. Comm'r v. Ewing, 439 F.3d 1009, 1012-14 (9th Cir. 2006). We agree with the Ninth Circuit that the tax court lacks jurisdiction under § 6015(e) unless a deficiency was asserted against the individual petitioning for review. The language of § 6015(e)(1) is clear and unambiguous: an individual may petition the tax court for review "[i]n the case of an individual *against whom a deficiency has been asserted* and who elects to have subsection (b) and (c) apply...." 26 U.S.C. § 6015(e)(1) (emphasis added). As such, we end our inquiry into the meaning of the statute and apply its plain language. Citicasters v. McCaskill, 89 F.3d 1350, 1354-55 (8th Cir. 1996); Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1440 (8th Cir. 1993) (en banc). Applying the statute's plain language, we hold that the tax court had no jurisdiction to review Bartman's petition for review of the IRS's denial of her tax year 1997 refund request because no deficiency had been assessed against Bartman for tax year 1997. [Emphasis added; fn. ref. omitted.]

Bartman v. Commissioner, 446 F.3d at 787-788.

[18]The conference report accompanying the 2001 Consolidated Appropriations Act states in pertinent part:

Timing of request for relief.--Confusion currently exists as to the appropriate point at which a request for innocent spouse relief should be made by the taxpayer and considered by the IRS. Some have read the statute to prohibit consideration by the IRS of requests for relief until after an assessment has been made, i.e., after the examination has been concluded, and if challenged, judicially determined. Others have read the statute to permit claims for relief from deficiencies to be made upon the filing of the return before any preliminary determination as to whether a deficiency exists or whether the return will be

(continued...)

law.  The Commissioner "determines that there is a deficiency" in a document known as a "notice of deficiency" that the Commissioner sends or issues to the taxpayer.  See sec. 6212(a).  An "assessment" is the procedure by which the Commissioner officially records a tax liability.  See sec. 6203.  However, there are limitations on the authority of the Commissioner to assess a "deficiency" that the Commissioner has "determined".  See, e.g., secs. 6213, 6215.  An "assessment" by the Commissioner is required before the Commissioner may proceed to collect a tax liability.  See sec. 6502.

---

[18](...continued)
examined. * * * Congress did not intend that taxpayers be prohibited from seeking innocent spouse relief until after an assessment has been made; Congress intended the proper time to raise and have the IRS consider a claim to be at the same point where a deficiency is being considered and asserted by the IRS.  This is the least disruptive for both the taxpayer and the IRS since it allows both to focus on the innocent spouse issue while also focusing on the items that might cause a deficiency. * * * The bill clarifies the intended time by permitting the election under [section 6015] (b) and (c) to be made at any point after a deficiency has been asserted by the IRS.  A deficiency is considered to have been asserted by the IRS at the time the IRS states that additional taxes may be owed.  Most commonly, this occurs during the Examination process.  It does not require an assessment to have been made, nor does it require the exhaustion of administrative remedies in order for a taxpayer to be permitted to request innocent spouse relief.

H. Conf. Rept. 106-1033, at 1022-1023 (2000), 2000-3 C.B. 304, 352-353.

Although the Eighth Circuit in <u>Bartman</u> interchangeably used terms that are not synonymous in the Federal tax law, after a careful reading of the Eighth Circuit's opinion in <u>Bartman</u> (and its opinion in <u>Sjodin</u> that relied on <u>Bartman</u>), I believe that the Eighth Circuit in <u>Bartman</u> (and in <u>Sjodin</u>) construed the language "a deficiency has been asserted" that appears in the phrase "against whom a deficiency has been asserted" to mean "a deficiency has been determined" by the Commissioner in a notice of deficiency.[19]  In reaching that conclusion, the Eighth Circuit

_____

[19]Before the Eighth Circuit in <u>Bartman</u> began to use interchangeably various terms that have different meanings in the Federal tax law, see <u>supra</u> note 17, the Eighth Circuit stated:

> Congress created the United States Tax Court "to provide taxpayers with a means of challenging assessments made by the Commissioner without first having to pay the alleged deficiency.  Without such a forum, taxpayers would have to pay the asserted deficiency and then initiate a suit in federal district court for a refund."  <u>Samuels, Kramer & Co. v. Comm'r</u>, 930 F.2d 975, 979 (2d Cir. 1991).  As an Article I court, the tax court is a court of "strictly limited jurisdiction."  <u>Kelley v. Comm'r</u>, 45 F.3d 348, 351 (9th Cir. 1995).  A notice of deficiency issued by the IRS pursuant to § 6212 is the taxpayer's jurisdictional "ticket to the Tax Court."  <u>Bokum v. Comm'r</u>, 992 F.2d 1136, 1139 (11th Cir. 1993) (quoting <u>Stoecklin v. Comm'r</u>, 865 F.2d 1221, 1224 (11th Cir. 1989)); <u>Spector v. Comm'r</u>, 790 F.2d 51, 52 (8th Cir. 1986) (per curiam) (citing <u>Laing v. United States</u>, 423 U.S. 161, 165, 96 S.Ct. 473, 46 L.Ed.2d 416 n. 4 (1976), and holding that "the determination of a deficiency and the issue of a notice of deficiency is an absolute precondition to tax court jurisdiction").  Accordingly, the IRC provides that the tax court has jurisdiction over petitions for review from determinations regarding the availability of § 6015 relief only where a deficiency has been

(continued...)

may have been misled by the position that the Government advanced on appeal in Bartman (and in Sjodin).[20]  In the briefs that the Government filed in Bartman (and in Sjodin),[21] the Government argued that the language "a deficiency has been asserted" that appears in the phrase "against whom a deficiency has been asserted" means "a deficiency has been determined" by the Commissioner.  As explained above, the Commissioner "determines that there is a deficiency" in a document called a "notice of deficiency" that the Commissioner sends to the taxpayer.  The legislative history of the amendment of section 6015(e)(1) belies the position of the Government on appeal in Bartman (and in Sjodin).[22]  See supra note 18.

---

[19](...continued)
asserted against the taxpayer. § 6015(e)(1).

Bartman v. Commissioner, 446 F.3d at 787.

I also read the Eighth Circuit's opinion in Sjodin, which relied on Bartman, as construing the language "a deficiency has been asserted" to mean "a deficiency has been determined" by the Commissioner in a notice of deficiency issued to the taxpayer. Thus, the Eighth Circuit stated in Sjodin:  "This circuit has recently concluded [in Bartman] that the issuance of a deficiency by the IRS is a prerequisite for tax court jurisdiction over a petition for review from an IRS determination regarding relief available under § 6015."  Sjodin v. Commissioner, __ Fed. Appx. __, 97 AFTR 2d 2006-2622 (emphasis added).

[20]The Government took the same position on appeal of Ewing I to the Ninth Circuit.

[21]See supra note 20.

[22]See supra note 20.

In apparently adopting the position advanced to it by the Government, the Eighth Circuit has not interpreted the phrase "against whom a deficiency has been asserted" that it held was "clear and unambiguous" and "plain," Bartman V. Commissioner, 446 F.3d 785, 787, 788 (8th Cir. 2006), affg. in part and vacating in part T.C. Memo. 2004-93, according to the language in that phrase. Instead, it has construed that phrase and gave it a meaning that is contrary to, and not apparent from, the language in that phrase.[23]

I turn finally to the Ninth Circuit's opinion in Ewing II to explain why I am not persuaded by that opinion that the Court should overrule Ewing I. According to the Ninth Circuit, the language of the amendment of section 6015(e)(1) is "plain", Commissioner v. Ewing, 439 F.3d at 1013; "by interpreting the

_____

[23]The only reasonable alternative to my reading of the Eighth Circuit's opinion in Bartman is that, because of the Eighth Circuit's interchangeable use of various terms that are not synonymous in the Federal tax law, that Court's holding as to the meaning of the phrase "against whom a deficiency has been asserted" is ambiguous. In this connection, I note that the Court Opinion states: "We construe Bartman's holding to be the sentence 'We agree with the Ninth Circuit that the tax court lacks jurisdiction under § 6015(e) unless a deficiency was asserted against the individual petitioning for review'". Court op. pp. 14-15 note 7 (emphasis added). That statement of the Court Opinion ignores what the Eighth Circuit stated its holding to be in Bartman. The Eighth Circuit stated: "Applying the statute's plain language, we hold that the tax court had no jurisdiction to review Bartman's petition for review of the IRS's denial of her tax year 1997 refund request because no deficiency had been assessed against Bartman for tax year 1997." Bartman v. Commissioner, supra at 788 (emphasis added).

statute as not requiring the assertion of a deficiency, the Tax Court simply has written the language out of the statute", id. at 1014; and by doing so, the Tax Court violated "the basic principle of statutory construction that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'", id.

With respect to the Ninth Circuit's conclusion in Ewing II that the language "against whom a deficiency has been asserted" is "plain", the Court Opinion in the instant case and the Eighth Circuit's opinions in Bartman and Sjodin belie that conclusion.

With respect to the Ninth Circuit's conclusions in Ewing II that in Ewing I the Court wrote the language "against whom a deficiency has been asserted" out of section 6015(e)(1), thereby making that phrase "superfluous, void, or insignificant", id., and violating a basic principle of statutory construction, id., that is not what the Court did in Ewing I. The Court found in Ewing I that Congress added the phrase "against whom a deficiency has been asserted" to section 6015(e)(1) in order to prevent a taxpayer from making a claim for relief under section 6015 until a "deficiency has been asserted" only in a situation where tax may or may not have been underreported in a return, namely, only in a "deficiency" situation. Ewing v. Commissioner, 118 T.C. at 505. Thus, under Ewing I, in a case where tax may or may not

have been underreported in a return, and only in such a case, must "a deficiency * * * [have] been asserted" in order for the Court to have jurisdiction over such a case.[24]  See id. Accordingly, Ewing I did not read the phrase "against whom a deficiency has been asserted" out of section 6015(e)(1) as amended by the 2001 Consolidated Appropriations Act and did not make that phrase superfluous, void, or insignificant in violation of a basic principle of statutory construction.

I am not persuaded by the Ninth Circuit's opinion in Ewing II, the Eighth Circuit's opinions in Bartman and Sjodin, or the Court Opinion in the instant case that the Court erred in Ewing I.  Consequently, I cannot in good conscience conclude that the Court should overrule Ewing I, and I dissent.

COLVIN, COHEN, SWIFT, WELLS, GALE, and MARVEL, JJ., agree with this dissenting opinion.

---

[24]Ewing I was not a case where tax may or may not have been underreported in a return.  Ewing I was a case where the tax due shown in the return was not paid, the Commissioner assessed such unpaid tax, and the taxpayer sought relief under sec. 6015(f) in a stand-alone sec. 6015(f) "nondeficiency" case.  See Ewing v. Commissioner, 118 T.C. at 506.

VASQUEZ, J., dissenting:  Respectfully, I do not believe we should reverse our decision in Ewing v. Commissioner, 118 T.C. 494 (2002) (Ewing I), revd. 439 F.3d 1009 (9th Cir. 2006).

We have previously considered what we should do when an issue comes before us a second time after a Court of Appeals has reversed a prior Tax Court opinion on the same point.  Lardas v. Commissioner, 99 T.C. 490, 494 (1992).  In Lawrence v. Commissioner, 27 T.C. 713, 716-717 (1957), revd. 258 F.2d 562 (9th Cir. 1958), we decided that, although we should seriously consider the reasoning of the Court of Appeals which reversed our decision, we ought not follow the reversal if we believe it is incorrect.  See Lardas v. Commissioner, supra.

> The Tax Court, being a tribunal with national jurisdiction over litigation involving the interpretation of Federal taxing statutes which may come to it from all parts of the country, has * * * [an] obligation to apply with uniformity its interpretation of those statutes.  That is the way it has always seen its statutory duty and, with all due respect to the Courts of Appeals, it cannot conscientiously change unless Congress or the Supreme Court so directs.  [Lawrence v. Commissioner, supra at 719-720.]

This case is not governed by the Golsen doctrine.  See Court op. pp. 7, 16.  In Ewing I, we interpreted the statute.  If Congress disagrees with that interpretation, then Congress can revise the statute to provide otherwise.  Neal v. United States, 516 U.S. 284, 295-296 (1996).

I do not believe that the opinions of the U.S. Courts of Appeals for the Eighth and Ninth Circuit "change the judicial landscape". See Court op. p. 16. The reasoning and analysis of the U.S. Courts of Appeals for the Eighth and Ninth Circuit is essentially the reasoning and analysis of the dissent in Ewing I. See Bartman v. Commissioner, 446 F.3d 785, 787-788 (8th Cir. May 2, 2006); Ewing v. Commissioner, 439 F.3d at 1013-1015; Ewing I, supra at 510-528 (Laro, J., dissenting). These views (i.e., of the U.S. Courts of Appeals for the Eighth and Ninth Circuit and of the dissent in Ewing I) were before this Court in Ewing I; they were given serious consideration; and they were rejected.

Accordingly, when a Court of Appeals reverses our original decision but neither addresses any new arguments nor provides any new analysis, as is the case herein, I do not believe we should reverse our original decision. Respectfully, I dissent.

SWIFT, J., agrees with this dissenting opinion.

MARVEL, <u>J.</u>, dissenting:  Relying on what the Court's Opinion asserts is the plain meaning of prefatory language in section 6015(e)(1), the Court holds that it does not have jurisdiction under section 6015(e)(1) to review the Commissioner's determination denying a taxpayer relief under section 6015(f) in a nondeficiency case.  Specifically, the Court's Opinion concludes that, in order for us to have jurisdiction over a taxpayer's petition for relief under section 6015, the taxpayer must be a person "against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply".  The Court bases its holding that we have no jurisdiction to decide this case on its conclusion that petitioner is not an individual "against whom a deficiency has been asserted".  I disagree.  Because I conclude that petitioner is an individual "against whom a deficiency has been asserted", I contend that the Court's Opinion deciding the jurisdictional issue against petitioner is in error.

Congress enacted section 6015 in 1998 as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 734.  As originally enacted, section 6015(e)(1) provided, in pertinent part, that

> (1) In general.--In the case of an individual who elects to have subsection (b) or (c) apply--
>
> > (A) In general.--The individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section
> > * * *

In 2001, Congress amended section 6015(e)(1), effective on December 21, 2000 (2001 amendment). Consolidated Appropriations Act, 2001, Pub. L. 106-554, app. G, sec. 313, 114 Stat. 2763A-641 (2000). As a result, section 6015(e)(1) currently provides, in pertinent part,

> SEC. 6015(e). Petition for Review by Tax Court.--
>
> (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply--
>
> (A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section * * *

The Court's Opinion concludes that we do not have jurisdiction because petitioner is not an individual against whom a deficiency has been asserted. Court op. p. 17. The Court's Opinion explains that there is no deficiency because petitioner reported the additional tax liability attributable to the embezzlement income on an amended return, and an amount reported on an amended return must be treated as an amount shown by the taxpayer upon his return in calculating the amount of a deficiency under section 6211(a). See sec. 301.6211-1(a), Proced. & Admin. Regs.

In reaching its conclusion, the Court relies upon the opinions of the Court of Appeals for the Ninth Circuit and the

Court of Appeals for the Eighth Circuit in <u>Commissioner v. Ewing</u>, 439 F.3d 1009 (9th Cir. 2006), revg. <u>Ewing v. Commissioner</u>, 118 T.C. 494 (2002) (Ewing I) and vacating 122 T.C. 32 (2004), and <u>Bartman v. Commissioner</u>, 446 F.3d 785 (8th Cir. 2006), affg. in part and revg. in part T.C. Memo. 2004-93.  Both the Court of Appeals for the Ninth Circuit and the Court of Appeals for the Eighth Circuit concluded that the language added to section 6015(e)(1) by the 2001 amendment was clear and unambiguous and that the 2001 amendment limited our jurisdiction in section 6015(f) cases to those cases in which a deficiency has been asserted.  However, the Court of Appeals for the Eighth Circuit in <u>Bartman</u> appears to have equated the language "against whom a deficiency has been asserted" to a requirement that a section 6015(f) case must arise from a deficiency determination by the Commissioner.  See <u>Bartman v. Commissioner</u>, <u>supra</u> at 787 (Tax Court has no jurisdiction over a section 6015 petitioner "where no deficiency was determined by the IRS").

The language that Congress chose to add to section 6015(e)(1) in 2001 stops far short of requiring that the Commissioner must actually have determined a deficiency.  The determination of a deficiency is a technical concept that refers to the action taken by the Commissioner after he evaluates a taxpayer's tax situation and finally concludes that the taxpayer erred either in making a return that understated his tax

liability or in failing to make a return at all.  The Commissioner "determines" a deficiency when he finally concludes that the taxpayer has understated his tax liability and reflects that determination in a notice of deficiency.  See sec. 6212.

Before the Commissioner issues a notice of deficiency, an extensive administrative examination or "audit" often occurs.  It begins when the Internal Revenue Service (the Service) selects a taxpayer (in the case of a failure to file) or a taxpayer's return for examination and notifies the taxpayer of the examination.  At that point, the Service has usually taken no position regarding the possible existence of a deficiency.  The Service typically will take no position regarding the existence of a deficiency until the examination has been completed.

If the Service concludes that there is an understatement of tax on a taxpayer's return, it will usually issue a preliminary report, commonly referred to as the 30-day letter.  The 30-day letter advises the taxpayer that the Service believes adjustments are necessary to the taxpayer's return and provides the taxpayer with a listing of the adjustments and a calculation of the taxpayer's correct income tax liability.  The 30-day letter will also state the amount of the understatement that the Service contends the taxpayer has made, and it will calculate the

deficiency and any additions to tax or penalties for which the Service alleges the taxpayer is liable.

The 30-day letter gives the taxpayer an opportunity to dispute the Service's asserted tax deficiency administratively and to contest the proposed imposition of any addition to tax or penalty. The Commissioner usually will issue a notice of deficiency after the administrative appeal process has been completed and the case is unagreed, or after the time limit for pursuing an administrative appeal has expired without taxpayer action, or if the expiration of the period of limitations for assessment is about to expire. A taxpayer who agrees to the proposed deficiency or who voluntarily files an amended return reflecting the proposed deficiency ordinarily does not receive a notice of deficiency.

With this background in mind, we must turn to the actual language of section 6015(e)(1) as amended. Although Congress is well aware of the words it has used in other sections of the Internal Revenue Code (the Code) to reflect that the Commissioner has determined a deficiency and issued a notice of deficiency, see sec. 6212(a), the words used by Congress in section 6015(e)(1) as amended do not contain any reference to a determination of a deficiency by the Commissioner. Section 6015(e)(1) refers only to "an individual against whom a deficiency has been asserted". It does not require that the

Commissioner (or anyone else for that matter) must actually have <u>determined</u> a deficiency.  The pertinent language of section 6015(e)(1) as amended requires only that a deficiency must have been <u>asserted</u> by someone, but it does not specify by whom or how or when.

Because section 6015(e) as amended does not use the magic words "determine a deficiency" or specify that the deficiency must actually be asserted by the Commissioner, section 6015(e)(1) as amended screams out for interpretation.  If Congress had intended to limit the right to petition this Court in section 6015 cases only to those taxpayers who had received a notice of deficiency, it is beyond debate that Congress knew how to say so clearly and unequivocally.  The fact that Congress did not refer to "an individual against whom a deficiency has been determined" or to "an individual against whom the Commissioner has determined a deficiency" is compelling evidence that Congress did not intend, when it amended section 6015(e)(1), to limit the right to petition this Court in section 6015 cases to those taxpayers to whom the Commissioner had mailed a notice of deficiency.

This case illustrates why recourse to the legislative history is warranted now and was warranted in Ewing I.  Petitioner filed a joint return for 1999 with his wife.  On that return, there is an understatement of tax attributable to the erroneous items (unreported embezzlement income) of petitioner's

wife.  Petitioner discovered the understatement after the joint return was filed.  On the advice of counsel, petitioner and his wife filed an amended return for 1999 that reported the previously unreported embezzlement income of petitioner's wife and calculated an additional income tax liability attributable to the previously unreported embezzlement income.  That additional tax liability was not paid when petitioner and his wife filed the amended return, nor has it been paid to date.

Although respondent was under no legal obligation to do so, respondent processed the amended return[1] and, without issuing a notice of deficiency, assessed[2] the additional tax liability reported on the amended return.  Subsequently, petitioner submitted a second Form 8857, Request for Innocent Spouse Relief, which respondent denied.[3]  Petitioner then filed a petition in this Court seeking a review of respondent's determination.  It is our jurisdiction over this petition that the Court's Opinion concludes is nonexistent.

---

[1]See, e.g., <u>Badaracco v. Commissioner</u>, 464 U.S. 386 (1984).

[2]Assessment is a technical term in the tax field.  It is generally used to describe the formal act of recording on the records of the Internal Revenue Service a tax liability that has been reported on a tax return, sec. 6201(a)(1), or that otherwise has become final and/or assessable, sec. 6213(b), (c), and (d).  See sec. 6203.

[3]Petitioner filed his initial Form 8857 when he filed his amended return.  However, respondent did not process that request.  A copy of the initial Form 8857 is not in the record.

In order to apply section 6015(e)(1) to these facts, we must first decide what the term "asserted" means.  Section 6015(e)(1) does not contain any definition, so, in accordance with accepted principles of statutory construction, we apply the commonly accepted definition.  See, e.g., Muscarello v. United States, 524 U.S. 125, 127-132 (1998); Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 833 (9th Cir. 1996); Keene v. Commissioner, 121 T.C. 8, 14 (2003).  In Webster's Third New International Dictionary, the word "assert" means "to state or affirm positively, assuredly, plainly or strongly" or, alternatively, "to demonstrate the existence of".  Webster's Third New International Dictionary 131 (1993).  In Merriam Webster's Collegiate Dictionary, the word "assert" means "to state or declare positively and often forcefully or aggressively" or, alternatively, "to demonstrate the existence of".  Merriam Webster's Collegiate Dictionary 69 (10th ed. 1997).

In order to apply section 6015(e)(1) to these facts, we must also understand the term "deficiency".  The term is not defined in section 6015.  However, it is defined in section 6211(a).  Section 6211(a) provides:

> (a) In General.--For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, and 44 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44 exceeds the excess of--

(1) the sum of

 (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

 (B) the amounts previously assessed (or collected without assessment) as a deficiency, over--

(2) the amount of rebates as defined in subsection (b)(2), made.

Essentially, a deficiency, as defined in section 6211(a), is the number remaining after the amount of tax shown on a taxpayer's return plus any amounts previously assessed as deficiencies (minus refunds) is subtracted from the taxpayer's correct tax liability.

In order to ascertain whether a deficiency within the meaning of section 6211 has been asserted, we must analyze whether section 6211 requires us to examine the petitioner's original return or his amended return.  The Court's Opinion did not make this analysis.  Instead, the Court's Opinion, apparently relying on section 301.6211-1(a), Proced. & Admin. Regs., concluded that a deficiency must be calculated with reference to the amended return.

I believe that, if an analysis had been performed, it would have supported a conclusion that the references to "return" in sections 6211 and 6015 are to the taxpayer's original return and

not to an amended return.  An amended return is a document of uncertain status under the Internal Revenue Code.  There is no statutory requirement to file an amended return in the Code.  See Badaracco v. Commissioner, 464 U.S. 386 (1984).  There is no regulatory or administrative requirement promulgated by the Commissioner requiring a taxpayer to file an amended return.  See id.  In fact, the Commissioner is not required to accept and process an amended return.  See, e.g., Dover Corp. & Subs. v. Commissioner, 148 F.3d 70, 72-73 (2d Cir. 1998), affg. T.C. Memo. 1997-339 and T.C. Memo. 1997-340; Koch v. Alexander, 561 F.2d 1115, 1117 (4th Cir. 1977); Miskovsky v. United States, 414 F.2d 954 (3d Cir. 1969).  The Commissioner will process an amended return only when he chooses to do so.  As the Court of Appeals for the Fourth Circuit stated in Koch v. Alexander, supra at 1117:

> There is simply no statutory provision authorizing the filing of amended tax returns, and while the IRS has, as a matter of internal administration, recognized and accepted such returns for limited purposes, their treatment has not been elevated beyond a matter of internal agency discretion.  [Fn. ref. omitted.]

There are many instances in which the Federal courts have examined provisions of the Code and determined that a statutory reference to "return" is to the taxpayer's original return.  In Badaracco v. Commissioner, supra at 393, the United States Supreme Court stated:

Indeed, as this Court recently has noted, <u>Hillsboro National Bank v. Commissioner</u>, 460 U.S. 370, 378-380, n.10 (1983), the Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace. Thus, when Congress provided for assessment at any time in the case of a false and fraudulent "return," it plainly included by this language a false or fraudulent <u>original</u> return. In this connection, we note that until the decision of the Tenth Circuit in <u>Dowell v. Commissioner</u>, 614 F.2d 1263 (1980), cert. pending, No. 82-1873, courts consistently had held that the operation of §6501 and its predecessors turned on the nature of the taxpayer's original, and not his amended, return.[8]

[8]The significance of the original, and not the amended, return has been stressed in other, but related, contexts. It thus has been held consistently that the filing of an amended return in a nonfraudulent situation does not serve to extend the period within which the Commissioner may assess a deficiency. See, <u>e.g.</u>, <u>Zellerbach Paper Co. v. Helvering</u>, 293 U.S. 172 (1934); <u>National Paper Products Co. v. Helvering</u>, 293 U.S. 183 (1934); <u>National Refining Co. v. Commissioner</u>, 1 B.T.A. 236 (1924). It also has been held that the filing of an amended return does not serve to reduce the period within which the Commissioner may assess taxes where the original return omitted enough income to trigger the operation of the extended limitations period provided by §6501(e) or its predecessors. See, e.g., <u>Houston v. Commissioner</u>, 38 T.C. 486 (1962); <u>Goldring v. Commissioner</u>, 20 T.C. 79 (1953). And the period of limitations for filing a refund claim under the predecessor of §6511(a) begins to run on the filing of the original, not the amended, return. <u>Kaltreider Construction, Inc. v. United States</u>, 303 F.2d 366, 368 (CA3), cert. denied, 371 U.S. 877 (1962).

The undisputed facts of this case establish that (1) petitioner's original return understated his and his wife's income tax liability for 1999, and (2) there was a deficiency in income tax for 1999 resulting from that understatement. Given

the commonly accepted definition of the term "assert", I contend that it is also clear that (1) petitioner and his wife "asserted" the deficiency on their amended 1999 return, and (2) respondent "asserted" the same deficiency when he assessed the additional tax liability reported on petitioner's amended 1999 return.  If one concludes, however, that the language of section 6015(e)(1) is not clear because it is susceptible of more than one interpretation as outlined above, then recourse to the legislative history of section 6015(e)(1) as amended is warranted.

In Ewing I, we reviewed the legislative history of the 2001 amendment to section 6015(e).  After quoting pertinent language in the conference report accompanying the Consolidated Appropriations Act, 2001, see H. Conf. Rept. 106-1033, at 1023 (2000), we concluded as follows:

> The conference report indicates that the language "against whom a deficiency has been asserted" was inserted into section 6015(e) to clarify the proper time for making a request to the Commissioner for relief from joint and several liability for tax that may have been underreported on the return.  Congress wanted to prevent taxpayers from submitting premature requests to the Commissioner for relief from potential deficiencies before the Commissioner had asserted that additional taxes were owed.  Congress also wanted to make it clear that a taxpayer does not have to wait until after an assessment has been made before submitting a request to the Commissioner for relief under section 6015 * * *  [Ewing v. Commissioner, 118 T.C. at 505.]

I contend that, in Ewing I, we properly relied on the legislative history to interpret whether petitioner was "an individual against whom a deficiency has been asserted" because the language does not support a conclusion that a deficiency must actually have been determined before a taxpayer may seek relief under section 6015, and interpretation is necessary to ascertain the meaning of section 6015(e)(1) as amended.  I also contend that the legislative history makes it clear that the assessment of tax is one way, but not the only way, in which a deficiency may be asserted.[4]

---

[4]The Commissioner's own regulations also are consistent with the legislative history.  After sec. 6015(e) was amended in 2001, the Commissioner promulgated sec. 1.6015-5(b)(5), Income Tax Regs., entitled "Time and manner for requesting relief":

> (5)  Premature requests for relief.--The Internal Revenue Service will not consider premature claims for relief under §1.6015-2, 1.6015-3, or 1.6015-4.  A premature claim is a claim for relief that is filed for a tax year prior to the receipt of a notification of an audit or a letter or notice from the IRS indicating that there may be an outstanding liability with regard to that year.  Such notices or letters do not include notices issued pursuant to section 6223 relating to TEFRA partnership proceedings.  A premature claim is not considered an election or request under §1.6015-1(h)(5).  [Emphasis added.]

Because I believe we properly concluded in Ewing I that section 6015(e)(1) as amended is ambiguous and that recourse to the legislative history of the 2001 amendment was appropriate, I respectfully dissent.

COHEN and SWIFT, JJ., agree with this dissenting opinion.