T.C. Summary Opinion 2010-62

UNITED STATES TAX COURT

CAROL LYNN HOOD VENABLES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22068-08S.                Filed May 18, 2010.

Carol Lynn Hood Venables, pro se.

<u>Shannon E. Loechel</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code.

This case arises from petitioner's request for relief from joint and several liability for unpaid Federal income tax for 1997. Respondent determined that petitioner is not entitled to relief. Thus, the sole issue for decision is whether petitioner is entitled to equitable relief under section 6015(f) for the unpaid income tax liability for 1997.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioner resided in Georgia when she filed her petition.

Petitioner married Leamon Hood, Jr. (Mr. Hood), on May 12, 1984. She is a high school graduate who worked as a hotel desk clerk until she became pregnant in 1986. Once petitioner became pregnant, Mr. Hood wanted her to stop working and stay at home. Petitioner submitted to her husband's request, quitting her job in 1986. Petitioner gave birth to a daughter in 1986 and a son in 1988. Shortly after her daughter was born, Mr. Hood became physically and emotionally abusive towards petitioner. Petitioner has been unemployed since leaving work in 1986 through the time of trial.

Petitioner did not participate in the handling of household finances. Mr. Hood paid the household bills and prepared the

couple's income tax returns. Mr. Hood worked initially as a car salesperson, but in the year in issue he operated his own business as a factoring broker. Petitioner had no role in Mr. Hood's business or business affairs. The couple bought a marital home after their marriage but titled the home solely in Mr. Hood's name. Therefore, petitioner was not listed on the mortgage. Petitioner had no knowledge of subsequent second and third mortgages. Petitioner's sole interaction with income tax return preparation was signing a return before its completion and making a cursory inquiry as to whether they would receive a refund. Petitioner did not know whether the couple had ever received a tax refund. Petitioner shared a joint bank account with Mr. Hood but felt constrained from using any money in the account because of prior threats and abuse by Mr. Hood.

Throughout the marriage Mr. Hood caused petitioner to have multiple stays in a battered women's shelter. The Court received into evidence a copy of a petition for temporary protective order filed on September 18, 1997, describing a contemporaneous act of domestic violence by Mr. Hood, and a family violence incident report dated May 2, 2002, leading to the arrest of Mr. Hood.

Petitioner and Mr. Hood did not live lavishly or own expensive things. In fact, they filed three chapter 13 voluntary bankruptcy petitions. They filed their first bankruptcy petition on April 13, 1998, 2 days before their 1997 Federal income tax

return was due. Mr. Hood did not file the couple's joint 1997 Federal income tax return until 2-1/2 years later, on September 13, 1999, while the first bankruptcy was pending. For 1997 Mr. Hood reported wages of $7,197, a loss from his business of $9,110, and tax due of $4,961 after only $5 of withholding. The primary basis of their tax liability was a taxable individual retirement account distribution of $35,000. Mr. Hood also reported a nontaxable pension or annuity distribution of $35,623. He listed petitioner as an unemployed homemaker.

On June 23, 2000, the Bankruptcy Court for the Northern District of Georgia dismissed the first petition for failure to comply with the court's orders. Mr. Hood and petitioner filed a second bankruptcy petition within a week. When the court dismissed the second bankruptcy petition on January 30, 2001, again for failure to comply with the court's orders, Mr. Hood and petitioner filed a third petition on the same day.

The Internal Revenue Service (IRS) filed a proof of claim for the 1997 tax liability in each of the three bankruptcies. During the bankruptcies Mr. Hood made at least 18 payments of around $130 toward the couple's outstanding 1997 Federal income tax liability. The IRS listed these payments as undesignated bankruptcy payments on the 1997 transcript of account for petitioner and Mr. Hood. As of April 23, 2009, the balance of unpaid tax, additions to tax, penalties, and interest was $7,237.

Petitioner had wanted a divorce since at least 2001 but could not afford a lawyer. With the help of the Justice Center of Atlanta, Inc., petitioner divorced Mr. Hood in July 2003 while the third bankruptcy was pending. The divorce decree incorporated by reference a separation agreement in which the parties agreed that Mr. Hood would be responsible for the "Chapter 13" debts, and petitioner would be responsible for "0" debts.

The 2003 divorce decree provided that Mr. Hood would pay $1,100 per month in alimony and $500 per month in child support; however, petitioner did not receive any alimony payments until 2006. The alimony payments petitioner received in 2006 were only a fraction of the accumulated alimony due her. The alimony did not give rise to a Federal income tax liability, but petitioner nonetheless filed a Federal income tax return for 2006, claiming head of household filing status--her first separate Federal income tax return since the marriage--perhaps to claim a refundable credit. After petitioner failed to receive her expected $40 Federal income tax refund for 2006, she made inquiries, discovering for the first time that the IRS had applied her 2006 refund to 1997 because Mr. Hood had failed to pay in full the outstanding balance of their 1997 Federal income tax liability. Following the issuance of a contempt order dated

May 3, 2007, authorities arrested Mr. Hood for willfully failing to pay $23,741 in alimony to petitioner.

On September 27, 2007, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief (request for relief), attaching various documents including the 1997 petition for a temporary protective order, the 2002 family violence incident report, the 2003 separation agreement, the 2003 divorce decree, and the 2007 contempt order. She also attached a Social Security statement dated June 13, 2007, showing that she had no earnings from 1987 through 2005, the last year data was available. At the time of her request for relief, petitioner was unemployed and was attending the University of Phoenix. She financed her education entirely through Federal Stafford Loans.

Petitioner claimed economic hardship as a basis for relief. However, she only partially completed part V of Form 8857, the section that describes current financial situation. Petitioner listed two adults with no children in her household and she detailed some of her current expenses, but she did not complete the income section.

On June 12, 2008, respondent issued a final Appeals determination denying petitioner relief from joint and several liability under section 6015(f). Petitioner timely petitioned this Court, contesting respondent's denial of relief. In a notice dated September 30, 2008, respondent notified Mr. Hood of

petitioner's petition to the Court and informed Mr. Hood of his right to intervene.  Mr. Hood chose not to intervene.

## Discussion

In general, taxpayers filing a joint Federal income tax return are each responsible for the accuracy of their return and are jointly and severally liable for the entire tax liability due for that year.  Sec. 6013(d)(3);  Butler v. Commissioner, 114 T.C. 276, 282 (2000).  In certain circumstances, however, a spouse may obtain relief from joint and several liability by satisfying the requirements of section 6015.

Section 6015 applies to tax liabilities arising after July 22, 1998, and to tax liabilities arising on or before July 22, 1998, that remain unpaid as of such date.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740.  The liability at issue here arose during 1997; however, that liability remained unpaid as of July 22, 1998.[1]  Therefore, petitioner may apply for relief under section 6015.  See Washington v. Commissioner, 120 T.C. 137, 155 (2003).

Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief under section 6015(b) from

---

[1]In the wake of Billings v. Commissioner, 127 T.C. 7 (2006), Congress amended sec. 6015(e)(1) to confirm our jurisdiction over stand-alone sec. 6015(f) underpayment cases.  Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C, sec. 408(a), 120 Stat. 3061.

joint and several liability attributable to an understatement of tax on a joint return. Section 6015(a)(2) provides that a spouse who is eligible to do so may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c).

The tax liability from which petitioner seeks relief results not from an understatement or a deficiency but from an underpayment of the tax liability shown on the 1997 joint Federal income tax return. Therefore, petitioner does not qualify for relief under section 6015(b) or (c). When relief is not available under either subsection (b) or subsection (c), the requesting spouse may seek equitable relief under section 6015(f), which the Commissioner may grant at his discretion.

We have jurisdiction to review petitioner's request for relief under section 6015(e), which allows a requesting spouse to contest the Commissioner's denial of relief by filing a timely petition in this Court. Petitioner contends that she is entitled to full relief from liability under section 6015(f) because, in main part, she suffered physical violence throughout her marriage, she was uninvolved in and unaware of the family finances, and Mr. Hood agreed to sole responsibility for the 1997 Federal income tax liability as part of their divorce decree.

Respondent argues that because of the bankruptcies and ongoing financial difficulties, petitioner had reason to know

that Mr. Hood would not pay their 1997 Federal income tax liability and it was not reasonable for her to believe he would pay the tax. Respondent argues, moreover, that petitioner has not provided sufficient information to conclude that she would suffer financial hardship if she did not receive relief.

We assess these contentions below as we address the requirements for relief under subsection 6015(f).

I.  Section 6015(f) Equitable Relief

Section 6015(f) provides in relevant part that a taxpayer may be relieved from joint and several liability if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for the unpaid tax and relief is not available under section 6015(b) or (c). We review, de novo, petitioner's entitlement to relief under 6015(f). See Porter v. Commissioner, 132 T.C. 203 (2009).

As section 6015(f) directs, the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447, for use in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency.[2]

---

[2]Rev. Proc. 2000-15, 2000-1 C.B. 447, was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, which is effective as to requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, as to which no preliminary
(continued...)

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, sets forth seven threshold conditions that must be satisfied before the Commissioner will consider a request for relief under section 6015(f), as follows: (i) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (ii) relief is not available to the requesting spouse under section 6015(b) or (c); (iii) the requesting spouse applies for relief no later than 2 years after the date of the Commissioner's first collection activity after July 22, 1998, with respect to the requesting spouse;[3] (iv) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (v) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (vi) the requesting spouse did not file or fail to file the return with fraudulent intent; and (vii) absent enumerated exceptions, the Federal income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return). Respondent concedes that petitioner satisfies the above threshold conditions.

---

[2](...continued)
determination letter had been issued as of that date. Petitioner's application for relief was filed on Oct. 10, 2007.

[3]The Court has held the 2-year limitation is invalid. Lantz v. Commissioner, 132 T.C. 131 (2009).

Where the requesting spouse satisfies the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth circumstances in which the Commissioner will ordinarily grant relief under section 6015(f) with respect to an underpayment of a properly reported liability. To qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the requesting spouse must: (1) No longer be married to, be legally separated from, or not have been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when she signed the return that the nonrequesting spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted.

Respondent and the Court agree petitioner meets the first requirement, because she divorced Mr. Hood in 2003. However, we agree with respondent that petitioner has provided insufficient financial information to show that she will suffer economic hardship. Thus, having failed to substantiate the third requirement, petitioner does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02.

Where a requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the Commissioner may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at

298.  The Court discusses below the nonexhaustive list of factors that Rev. Proc. 2003-61, sec. 4.03, provides.

A.  Marital Status

One factor is whether the requesting spouse has separated from or divorced the nonrequesting spouse.  Id. sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.  Petitioner divorced Mr. Hood in 2003.  This factor weighs in favor of relief.  See McKnight v. Commissioner, T.C. Memo. 2006-155 (divorce weighs in favor of relief under Rev. Proc. 2003-61, supra).

B.  Economic Hardship

Another consideration is whether the requesting spouse will suffer economic hardship if relief is not granted.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298.  Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses.  Butner v. Commissioner, T.C. Memo. 2007-136.

As stated earlier, petitioner provided insufficient financial information to establish that she would suffer economic hardship if relief were not granted.  Consequently, this factor weighs against granting relief.  See Banderas v. Commissioner, T.C. Memo. 2007-129 (lack of economic hardship weighs against relief under Rev. Proc. 2003-61, supra).

C. <u>Knowledge or Reason To Know</u>

This element weighs whether the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298. As relevant here, in determining whether the requesting spouse had reason to know of the underpayment, subfactors include any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's involvement in the household's finances, and any lavish or unusual expenditures compared with past spending levels (the factors specified in <u>Price v. Commissioner</u>, 887 F.2d 959, 965 (9th Cir. 1989)). Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(C), 2003-2 C.B. at 298. As stated earlier, there were no lavish expenditures and petitioner had no role in the household finances.

Typically, in the case of a reported but unpaid liability the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid. See <u>Washington v. Commissioner</u>, 120 T.C. at 151; see also <u>Feldman v. Commissioner</u>, T.C. Memo. 2003-201, affd. 152 Fed. Appx. 622 (9th Cir. 2005). The general rule for unpaid liabilities is that the requesting spouse must establish that: (1) When she signed the return, she had no knowledge or reason to know that the tax reported on the return would not be paid; and (2) it was reasonable for her to believe that the nonrequesting

spouse would pay the tax shown due.  See Morello v. Commissioner, T.C. Memo. 2004-181; Ogonoski v. Commissioner, T.C. Memo. 2004-52; Collier v. Commissioner, T.C. Memo. 2002-144.

Respondent contends that because petitioner and Mr. Hood were in bankruptcy at the time the tax return was filed, petitioner could not have reasonably believed that Mr. Hood would pay the tax.  Petitioner in contrast emphasizes that Mr. Hood was the sole breadwinner and was responsible for preparing the income tax returns and paying the family bills throughout the marriage. Petitioner had no income and little knowledge of the couple's finances.  Thus, petitioner contends that she believed that Mr. Hood would pay the tax.

Petitioner knew that she and her husband were in bankruptcy at the time Mr. Hood filed the 1997 income tax return, and she knew they were having financial difficulties.  In Banderas v. Commissioner, supra, the Court held that "a reasonable belief that taxes would be paid must at minimum incorporate a belief that funds would be on hand within a reasonably prompt period of time."  Likewise, in Vuxta v. Commissioner, T.C. Memo. 2004-84, the Court found that a taxpayer who filed the tax return during the pendency of a bankruptcy had reason to know that the tax would not be paid.  Similarly, in Morello v. Commissioner, supra, the Court found that it was not reasonable for a taxpayer who

returned to work because of their financial difficulties after her husband lost his job to believe the tax would be paid.

Accordingly, in the light of the above cases, and because petitioner concedes that she knew of the financial difficulties and the bankruptcies, the Court finds that it was not reasonable for petitioner to believe that the tax would be paid at the time she signed the joint 1997 Federal income tax return. Thus, this factor weighs against relief.

D. <u>Nonrequesting Spouse's Legal Obligation</u>

A further test is whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298. However, if the requesting spouse knew or had reason to know when the agreement was entered into that the nonrequesting spouse would not pay the liability, then this factor will not weigh in favor of relief. <u>Id.</u>

The 2003 divorce decree provides that Mr. Hood agreed to pay the chapter 13 debts, which included the unpaid 1997 Federal income tax liability. Nothing in the record indicates that petitioner knew or should have known when she entered into the divorce decree that Mr. Hood would not fulfill the Family Court order. He had been making payments to the IRS before the divorce

decree.  Therefore, this factor weighs in favor of granting relief.  See Magee v. Commissioner, T.C. Memo. 2005-263.

E.  Significant Benefit

Another consideration is whether the requesting spouse received significant benefit beyond normal support as a result of the unpaid tax liability.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.  Respondent has conceded that there is no evidence indicating that petitioner received significant benefit as a result of the unpaid tax liability. Therefore, the Court concludes that this factor weighs in favor of relief.  See Magee v. Commissioner, supra (lack of significant benefit weighs in favor of relief under Rev. Proc. 2003-61, supra).

F.  Compliance With Federal Tax Laws

Another factor is whether the requesting spouse has made a good faith effort to comply with the Federal tax laws in the succeeding years.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.

Respondent concedes petitioner has complied with Federal tax laws and filing requirements.  Therefore, this factor weighs in favor of relief.  See Harris v. Commissioner, T.C. Memo. 2009-26.

G.  Abuse

An additional element is whether the nonrequesting spouse abused the requesting spouse.  See Rev. Proc. 2003-61, sec.

4.03(2)(b)(i), 2003-2 C.B. at 299. The presence of abuse is a factor favoring relief, and a history of abuse may mitigate the requesting spouse's knowledge or reason to know. Id.

Despite respondent's disputing that petitioner was abused, the record clearly corroborates petitioner's credible testimony regarding the abuse. Therefore, this factor weighs in favor of relief and mitigates her knowledge or reason to know. See Fox v. Commissioner, T.C. Memo. 2006-22 (weighing abuse as a positive factor where a police report corroborated the requesting spouse's claim of assault).

H. Mental or Physical Health

A further consideration is whether the requesting spouse was in poor mental or physical health on the date she signed the return or at the time relief was requested. See Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

Petitioner did not claim that she was in poor mental or physical health on the date she signed the return or at the time the relief was requested. Therefore, this factor is neutral. See id.; see also Magee v. Commissioner, supra.

II. Conclusion: Weight of the Factors

Petitioner's knowledge at the time she signed the 1997 joint income tax return that the tax due would not be paid weighs against her entitlement to section 6015(f) relief. However, in considering her entitlement to relief under section 6015(f), her

knowledge is only one factor among many to be taken into account. As we have noted, no factor, in and of itself, is determinative. See Stolkin v. Commissioner, T.C. Memo. 2008-211; Beatty v. Commissioner, T.C. Memo. 2007-167; Banderas v. Commissioner, T.C. Memo. 2007-129. Likewise, while the economic hardship factor weighs against her, it does not outweigh the other factors.

Separate from petitioner's knowledge at the time she signed the 1997 joint Federal income tax return, the fact remains that petitioner had no income for 1997. Thus, the liability from which petitioner seeks relief is attributable entirely to Mr. Hood. Additionally, the abuse she suffered and feared mitigates her knowledge or reason to know that Mr. Hood would not pay the tax.

Considering the foregoing, and weighing the factors collectively, we find that it would be inequitable to hold petitioner liable for any unpaid tax liability resulting from the filing of the joint Federal income tax return for 1997.

In conclusion, the Court holds that petitioner is entitled to relief from joint and several liability under section 6015(f) with respect to any unpaid income tax liability for 1997.

To reflect the foregoing,

Decision will be entered for petitioner.